**Don Collis HOUSTON, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 09–08–00254–CR, 09–08–00255–CR.**

Court of Appeals of Texas, Beaumont.

Submitted Feb. 19, 2009.

Decided May 27, 2009.

Discretionary Review Refused Sept. 16, 2009.

---

Joseph R. Willie, II, D.D.S., J.D., Willie & Associates, P.C., Houston, for Appellant.

Michael R. Little, District Attorney, Michael A. Mark, Assistant District Attorney, Liberty, for State.

Before GAULTNEY, KREGER, and HORTON, JJ.

**608**

## OPINION

DAVID GAULTNEY, Justice.

Don Collis Houston, Jr. pled guilty on separate indictments for possession of a controlled substance and bail jumping. On appeal, Houston challenges the trial court's ruling on his motion to suppress evidence obtained in a search of the motor vehicle. The driver of the vehicle consented to the search, and Houston did not object to the search. We hold the search of the vehicle did not violate Houston's rights, and Houston failed to preserve his challenge to the indictment for bail jumping. Accordingly, we affirm the judgments.

The State indicted Houston in Cause No. CR25519 for possession of a controlled substance, cocaine, in the amount of four grams or more but less than two hundred grams. *See* Tex. Health & Safety Code Ann. § 481.115(d) (Vernon 2003). Houston filed a motion to suppress, on the grounds that any consent to search his property "was not freely given and was no more than acquiescence to a claim of lawful authority." In denying the motion to suppress, the trial court made findings of fact, as follows: (1) Houston was a passenger in a motor vehicle driven by S.M.[1]; (2) Houston allowed S.M. to operate and control the vehicle; (3) the motor vehicle was stopped for the traffic violation of speeding; (4) S.M. gave verbal consent to search the vehicle; (5) Houston was present during the search of the motor vehicle but neither objected to the search nor refused to give consent to the search. The trial court concluded that S.M. had authority to consent, that she properly consented, and that contraband was found during the search of the vehicle.

We review a trial court's suppression ruling under an abuse of discretion standard. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We accord almost total deference to the trial court's determination of historical facts, especially when those determinations turn on witnesses' credibility or demeanor, but review *de novo* the trial court's application of law to facts not turning on credibility or demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex.Crim.App.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 1037, 173 L.Ed.2d 471 (2009).

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. A search conducted pursuant to a valid consent meets a specifically established exception to the requirement of both a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The validity of an alleged consent to search is a fact question determined from consideration of all the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). While the federal constitution requires that voluntariness of consent be proved by a preponderance of the evidence, the Texas Constitution requires that voluntariness be shown by clear and convincing evidence. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex.Crim.App.2000).

To establish the reasonableness of a search, the State "is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."

---

1. At the time of the arrest Houston and S.M. were engaged to marry. At the hearing, Houston referred to S.M. as his ex-wife.

*United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The voluntary consent of a third party to a search of property under joint control is valid against the defendant. *Id.* at 169, 94 S.Ct. 988. The search may be valid even though the third party lacked actual authority to consent, provided the officer reasonably believed the person had authority to consent. *Illinois v. Rodriguez,* 497 U.S. 177, 186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). The issue is "whether the right to be free of *unreasonable* searches has been violated." *Id.* at 187, 110 S.Ct. 2793.

 A consent to search satisfies the Fourth Amendment so long as "the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte,* 412 U.S. at 248, 93 S.Ct. 2041. The totality of the surrounding circumstances must be considered in determining the voluntariness of the consent given in a particular case. *Id.* at 226, 93 S.Ct. 2041. Whether consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact. *Id.* at 227, 93 S.Ct. 2041.

 Voluntary consent given by a third party is not valid as to the defendant if the defendant is also present and expressly refuses to consent. *See Georgia v. Randolph,* 547 U.S. 103, 120, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) ("We therefore hold that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent

given to the police by another resident."). But police are not required to seek out potentially objecting co-tenants. *Id.* at 122, 126 S.Ct. 1515. Noting that the defendant in *Matlock* was not presented with the opportunity to object but was in a squad car not far away, the court in *Georgia v. Randolph* admitted it was "drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Id.* at 121, 126 S.Ct. 1515. The Court remarked that "the formalism is justified" because "[s]o long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it." *Id.* at 121–22, 126 S.Ct. 1515.

 On appeal, Houston argues S.M.'s consent was invalid because he possesses a right of privacy in the vehicle that is superior to S.M.'s right of possession.[2] The vehicle is registered to Houston's father. Houston testified that he has been driving the vehicle for about four years. During the suppression hearing, Houston admitted that S.M. had authority to drive the vehicle, and that she had his permission to operate the vehicle and to exercise control and management over it. *See*

---

**2.** Houston urges his conviction for possession of a controlled substance must be reversed and an acquittal ordered because the search of his vehicle was not legally conducted. We note that evidentiary insufficiency to support a guilty plea is trial error that does not result in acquittal. *Bender v. State,* 758 S.W.2d 278,

281 (Tex.Crim.App.1988). Similarly, a defendant who prevails on a motion to suppress is not automatically entitled to an acquittal. *State v. Huddleston,* 164 S.W.3d 711, 717 (Tex.App.-Austin 2005, no pet.). If appellant prevailed on appeal, the result would be a remand to the trial court.

*Maxwell v. State,* 73 S.W.3d 278, 282 (Tex. Crim.App.2002). In *Maxwell,* the defendant owned a tractor-trailer rig and employed a driver who was operating the vehicle at the time of the stop. *Id.* at 280. Although he knew the passenger owned the rig, the officer asked only the employee driver for consent to search. *Id.* Noting that common authority arises not from ownership but from the mutual use of the property, the Court of Criminal Appeals held the consent was valid. *Id.* at 281–82. As the authorized operator of the vehicle at the time of the detention, S.M. could consent to its search. *See id.*

Although Houston claims the officer "was told, unambiguously, that she could not give permission to search the automobile because the automobile belonged to the Defendant[,]" we find no testimony in the record of the hearing that S.M. told the officer that the vehicle belonged to her passenger, Houston. While that may be a possible inference, the evidence establishes only that she informed the officer the vehicle did not belong to her. S.M. did not testify at the hearing. The officer testified that S.M. gave verbal consent to a search of the vehicle, as follows:

Q. [by the Prosecutor] And then you asked for the consent?

A. Yes, ma'am, I did.

Q. And would you tell us again what it is she said?

A. She—she said that "It's not my vehicle, I can't give you consent."

Q. What, if anything, did you say to her?

A. I told [S.M.] that she was in care, custody and control of the vehicle and that she was driving. She said, "You can search it."

Q. Okay. How soon after did you explain to her that she was exercising care, custody and control that she could give consent and then she say, "Okay, you can search"?

A. It was a matter of seconds, two seconds.

 Houston argues S.M.'s consent is invalid. He suggests S.M. merely acquiesced to what she thought was the officer's lawful authority. Consent must be positive and unequivocal, and there must not be any duress or coercion. *Carmouche v. State,* 10 S.W.3d at 331 (citing *Schneckloth,* 412 U.S. at 228, 93 S.Ct. 2041). In *Carmouche,* the defendant submitted to a second pat-down while closely surrounded by four officers and after being told to turn around and put his hands on the car. 10 S.W.3d at 332. The defendant was only asked if he could be searched again after he complied with the order to turn around and put his hands on the car. *Id.* The Court held that under the circumstances a reasonable person could conclude that the second search, like the first *Terry* frisk, was not optional. *Id.* at 333. Houston implies that telling S.M. that she was in control of the vehicle was coercive. This is not a situation, as was the case in *Bumper,* when an officer falsely represents that he already has a search warrant. *See Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Nor does this case bear any resemblance to *Carmouche,* in which a prior, non-consensual *Terry* frisk preceded a request made under intimidating circumstances and a substantial exercise of authority. *See Carmouche,* 10 S.W.3d at 332. By all appearances, this was a routine traffic stop. The officer asked S.M. to exit the vehicle. The officer did not draw his weapon. She was not handcuffed and was not under arrest at this time. The officer did not frisk S.M. before asking if she would consent to a search. The officer asked for consent only once. The statement to S.M., to the effect

that she could consent to a search of the vehicle, was not false.

■ Houston analogizes S.M.'s statement that she did not own the vehicle to the invocation of the right to counsel. *Schneckloth* distinguished between the rights protected by the Fourth Amendment and the Sixth Amendment. *Schneckloth*, 412 U.S. at 236, 93 S.Ct. 2041. A waiver of Sixth Amendment rights requires an intentional relinquishment of a known right or privilege as a safeguard of the process that guarantees a defendant a fair trial. *Id.* at 236–37, 93 S.Ct. 2041. The Supreme Court recognized "a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment." *Id.* at. 241, 93 S.Ct. 2041. Fourth Amendment rights protect privacy. *Id.* The situation in this case is not analogous to the invocation of the right to counsel. The trial court's findings that S.M. had authority and voluntarily consented to a search are supported by the evidence.

■ Houston suggests that once the officer learned S.M. did not own the vehicle the officer was obliged to ask Houston for permission to search. It is mutual use, not ownership, that gives rise to common authority to consent to a search. *See Maxwell*, 73 S.W.3d at 281–82; *see also Welch v. State*, 93 S.W.3d 50, 54 (Tex.Crim.App.2002). Houston shared a mutual use of the vehicle with S.M. The car is registered in his father's name.

The officer testified that he did not ask Houston to consent to a search. He described the relative physical positions of the parties, as follows:

Q. Okay. Now, during this conversation where you were asking for the consent, where was Mr. Houston?

A. Mr. Houston is still inside the vehicle in the right front passenger seat.

Q. And where are you and [S.M.]?

A. We are in between my patrol car and her—the vehicle.

After obtaining consent to search from S.M., the officer went to the vehicle and informed Houston that S.M. had consented to a search, and instructed Houston to exit the vehicle and stand in the grassy ditch 12 to 15 feet from the car while the search was conducted. At the time, Houston was not under arrest and was not handcuffed. Houston did not expressly refuse to consent to the search, and never told the officer at any time not to search the vehicle.

■ Reasonableness does not require police to take affirmative steps to find a potential objector before acting on the consent they have received. *Georgia v. Randolph*, 547 U.S. at 122, 126 S.Ct. 1515. The trial court could reasonably conclude that Houston was not removed for the purpose of avoiding a possible objection. *See id.* at 121, 126 S.Ct. 1515. Houston was in the car when S.M. provided consent, the officer informed Houston that S.M. had given consent, and Houston was unrestrained during the search. Like *Matlock*, Houston was nearby while the search proceeded. *See United States v. Matlock*, 415 U.S. at 166, 94 S.Ct. 988. As a passenger in the vehicle, Houston had standing to contest the search and a reasonable expectation of privacy. *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2403, 168 L.Ed.2d 132 (2007); *Parker v. State*, 182 S.W.3d 923, 927 (Tex.Crim.App. 2006). Houston was present when the search was conducted. The trial court followed the guidelines established in *Maxwell* and *Matlock*. *See United States v. Matlock*, 415 U.S. at 169–71, 94 S.Ct. 988; *Maxwell v. State*, 73 S.W.3d at 282. The record supports the finding of an undisputed consent to search. Because the consent was not disputed by Houston when the

search occurred, the search did not violate the Fourth Amendment. *See Georgia v. Randolph*, 547 U.S. at 122, 126 S.Ct. 1515. Issue one is overruled.

In his opening brief, Houston argued in issue two that the record contained legally or factually insufficient evidence to support the convictions. Houston withdrew the issue in his reply brief, but the State suggests counsel for the appellant represented in the opening brief that certain events had not occurred in the proceedings below when he knew the true facts to be otherwise. The brief for the appellant stated "[a]s remarkable as it may seem, the State never introduced the Defendant's judicial confession, written waiver of rights, the Presentence Investigation and/or stipulations of evidence into evidence and the trial court *did not* admit same in the above-referenced cause numbers." As was established through the filing of supplemental records, this statement is incorrect.

Counsel for a party, through briefs and in any oral submission, is expected to provide the Court a fair and accurate understanding of the facts and the applicable law, and must not misrepresent, mischaracterize, misquote or miscite the facts or the law. The Court has inherent power to enforce compliance with the rules, and take appropriate action. Considering that the issue was withdrawn, and after examining the briefs, the record before the Court, and the procedural history in this case, the Court will not proceed further on issue two.

▪ Houston added an additional issue in his reply brief. The reply brief contends for the first time that the indictment in the bail jumping case does not charge Houston with the commission of an offense. Generally, the purpose of a reply brief is to address "any matter in the appellee's brief." Tᴇx.R.Aᴘᴘ. P. 38.3. The State did not discuss the validity of the

indictment in its brief; inclusion of an argument concerning this new issue not addressed in either appellant's or appellee's brief would generally be inappropriate for a reply brief. *See Barrios v. State,* 27 S.W.3d 313, 322 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd).

▪ Houston asks this Court to address the issue as a supplement to his brief. *See* Tᴇx.R.Aᴘᴘ. P. 38.7. A brief may be amended or supplemented with the court's permission "whenever justice requires, on whatever reasonable terms the court may prescribe." *Id.* Houston contends he should be allowed to supplement his brief "due [to] the fact that new case law on the matter has just been released." *See Garza v. State,* 269 S.W.3d 300 (Tex. App.-Amarillo 2008, pet. granted).

▪ "[B]riefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case[.]" Tᴇx.R.Aᴘᴘ. P. 38.9. We construe the briefing rules liberally to allow the issue to be presented as an amendment to the appellant's brief. It is not necessary to postpone submission or require additional briefing, however. *See id.* The law is well-settled.

▪ Houston did not file a motion to quash the indictment, as required to preserve errors of either form or substance in an indictment. *See Studer v. State,* 799 S.W.2d 263, 271 (Tex.Crim.App. 1990). Houston argues the instrument is not an indictment because "[t]he Indictment fails to state the terms of release the Defendant is alleged to have violated[.]" He contends "he essentially pled guilty to no crime and ... there is no evidence to sustain the conviction in Cause No. CR–26571." Houston suggests the omission of the terms of release on the bail bond in the indictment means he confessed to an act that is not a crime.

An indictment serves two functions: (1) to provide notice of the offense in order to allow a defendant to prepare a defense; and (2) to vest jurisdiction in the trial court. *See Cook v. State,* 902 S.W.2d 471, 478 (Tex.Crim.App.1995). Defects in an indictment, even substantive ones, do not deprive the trial court of jurisdiction. *Id.* at 476. To comprise an indictment, an instrument must charge a person with the commission of an offense. *Id.* at 477. In *Cook,* the name of the accused was omitted from the indictment and so completely failed to charge a person. *Id.* at 480. However, "a substantively defective indictment is sufficient to vest the trial court with jurisdiction." *Id.* at 477. An instrument qualifies as an indictment if it "include[s] one or more allegations necessary to give notice of the statutory offense with which the defendant was charged." *Duron v. State,* 956 S.W.2d 547, 551 (Tex. Crim.App.1997).

In this case, the indictment alleges that on or about September 5, 2006, "Don Collis Houston, Jr. did then and there, after being lawfully released from custody on a pending felony charge on condition that he subsequently appear in court, intentionally or knowingly fail to appear in accordance with the terms of his release[.]" The indictment both charged a person (Don Collis Houston, Jr.) and identified the statutory offense with which Houston was charged (Penal Code Section 38.10). *See* TEX. PEN.CODE ANN. § 38.10(a), (f) (Vernon 2003) ("A person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release." "An offense under this section is a felony of the third degree if the offense for which the actor's appearance was required is classified as a felony."). The indictment charged Houston with the commission of an offense.

The case relied on by Houston did not change this well-settled caselaw regarding waiver of error in an indictment. In *Garza,* the defendant waived indictment, agreed to proceed by information, and stipulated to having caused serious bodily injury to the complainant. 269 S.W.3d at 301. After the trial court revoked community supervision, the defendant appealed on the grounds that there was no evidence that he committed aggravated assault. *Id.* at 300–01. The appellate court rejected the issues raised on appeal, but reversed the judgment and remanded the case to the trial court because the information did not include the word "serious." *Id.* at 301. Holding that the information alleged the misdemeanor offense of simple assault, the appellate court remanded for a determination of trial court jurisdiction. *Id.* at 302. The appellate court reasoned that either the trial court convicted the defendant for a crime other than and greater than that contained in the charging instrument or the trial court imposed a sentence greater than that allowed by law for committing a misdemeanor offense. *Id.*

The proceedings in Houston's case do not implicate the concerns addressed by the intermediate appellate court in *Garza. See id.* Regardless of the terms of his release, Houston judicially admitted that he was released from custody on a pending felony charge on condition that he subsequently appear in court and that he intentionally or knowingly failed to appear in accordance with the terms of his release. Houston cannot argue that he was charged with and judicially confessed to conduct that is a misdemeanor. Here, the indictment specifically alleged Houston had been released on a pending felony charge. Moreover, the indictment's return to a felony court put Houston on notice that the charging of a felony was intended. *See Kirkpatrick v. State,* 279 S.W.3d 324, 328–

29 (Tex.Crim.App.2009). If he had a question about the allegations of the felony offense he was being charged with, Houston should have objected to the indictment. *Id.*

Furthermore, Houston judicially confessed to having committed the offense charged in the indictment. The judicial confession states "I have read the charging instrument and my attorney has explained it to me and I committed each and every element alleged. I swear, under oath, that I am guilty of the offense set out therein...." Having stipulated to committing a felony offense under Penal Code Section 38.10, he cannot challenge the State's proof of the offense. *See Bryant v. State,* 187 S.W.3d 397, 401 (Tex.Crim.App.2005) (holding a defendant may not challenge the sufficiency of the evidence on an element to which he stipulated); *Dinnery v. State,* 592 S.W.2d 343, 353 (Tex.Crim.App.1980) (op. on reh'g) ("It is well settled that a judicial confession, standing alone, is sufficient to sustain a conviction upon a guilty plea, ... and to satisfy the requirements of Article 1.15 ...."). The issue is overruled.

We affirm the judgments.

AFFIRMED.

HOLLIS HORTON, Justice, concurring.

I concur with the court's opinion to affirm the trial court's judgment. However, I disagree with the decision to not further address defense counsel's false statements to this Court regarding the trial court proceedings.

The record before us reflects that defendant's counsel, Joseph R. Willie II, filed a brief in this Court in which he argued that there was legally and factually insufficient evidence to support his client's two convictions because: "[a]s remarkable as it may seem, the State never introduced the Defendant's judicial confession, written waiver of rights, the Presentence Investigation and/or stipulations of evidence and the trial court *did not* admit same in the above-referenced cause numbers." In his brief, Defendant's counsel requested that we reverse and acquit his client in these two cases as a result of the State's failure to introduce evidence.

The State's attorney then caused the record to be supplemented with additional items not contained in the record originally filed with this Court. Afterward, the State's attorney filed a brief and responded to Houston's legal and factual sufficiency argument by stating: "This is an unmitigated and blatant lie on the part of Appellant's counsel and in fact Appellant's judicial confessions were indeed introduced into evidence *in the presence of Appellant's counsel.*"

Subsequently, in his reply brief, Houston withdrew the issue. The supplemented record further demonstrates that Mr. Willie was Houston's attorney in the trial court and that he was present when the State introduced Houston's judicial confessions into evidence. In his response to the State's request to supplement the record, Mr. Willie stated that he "was never made aware that such a record existed."

From the state of the record, it is reasonable to infer that Mr. Willie, believing that a record of the guilty plea proceeding did not exist, represented to this court a false fact concerning the State's alleged failure to introduce his client's judicial confession and only decided to recant when faced with a record showing what had actually occurred. While Mr. Willie's withdrawal of the issue might be grounds to mitigate his misrepresentation, I disagree that withdrawing the issue alone warrants no further proceedings.

Lawyer's "should demonstrate respect for the legal system and for those who

serve it, including judges, other lawyers and public officials." TEX. DISCIPLINARY R. PROF'L CONDUCT preamble ¶ 4, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G. app. A (Vernon 2005). Rule 3.03 of the Rules of Professional Conduct *require* that a lawyer not "knowingly make a false statement of material fact or law to a tribunal." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.03(a)(1). In my opinion, further proceedings are warranted to determine whether Mr. Willie made misrepresentations to the court knowingly. I disagree with the court's conclusion that as a court we will not proceed further on the issue.