Reversed and Remanded and Opinion filed June 22, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00475-CR

___________________

 

The State of Texas, Appellant

 

V.

 

Carolyn Sue Krizan-Wilson,
Appellee



 



 

On
Appeal from the 177th District Court

Harris County,
Texas



Trial Court Cause No. 1173934

 



 

 

OPINION

Appellee, Carolyn Sue Krizan-Wilson,
was indicted on July 14, 2008 for the murder of her
husband, Roy McCaleb, who had been killed on September 22, 1985. 
Appellee filed a motion to dismiss the indictment based on the nearly
twenty-three year prosecutorial delay between the alleged offense and the filing
of charges.  The trial court granted the motion and dismissed the case.  The
State of Texas now appeals the order of dismissal.  We reverse the trial
court’s order and remand for further proceedings in accordance with this opinion.

I.  Background

In her motion to dismiss the indictment and in a
subsequent hearing on the motion, appellee asserted that the State’s delay in
bringing charges violated her right to due process as guaranteed under the
Fifth Amendment to the United States Constitution.  Appellee additionally
argued that the pre-indictment delay violated her rights to (1) a speedy trial
as guaranteed by the Sixth and Fourteenth Amendments to the United States
Constitution, article I, section 10 of the Texas Constitution, and article 1.05
of the Texas Code of Criminal Procedure; (2) due course of law under article I,
section 19 of the Texas Constitution; (3) a fair trial pursuant to the Sixth
Amendment; and (4) testify and present a defense, as guaranteed by the Fifth
and Sixth Amendments, article 1, sections 10 and 19 of the Texas Constitution,
and the Texas Code of Criminal Procedure.  Appellee finally asserted that the
indictment was barred by the doctrine of laches. The trial court suggested sua
sponte that the delay may have violated her right to effective representation
under the Sixth Amendment and article I, section 10 of the Texas Constitution. 
Except for the speedy trial ground, the trial court entered findings of fact
and conclusions of law in support of each of these grounds for dismissal.

Numerous witnesses were called by each side during
the hearing on the motion to dismiss.  Waymon Allen, a private investigator
hired by appellee’s current counsel, testified that in 1985, appellee had hired
attorney Clarence Thompson to represent her.  Thompson died in 1988, and Allen
testified that his attempts to locate Thompson’s files relating to appellee
were unsuccessful.  Allen additionally stated that Thompson had hired Rafael
Gonzalez as an investigator in the case.  Gonzalez did not now recall the case,
and the evidence Gonzalez turned over to Thompson had been lost.  Thompson had also
hired a forensic examiner, Floyd McDonald, who is also now deceased.  Allen,
the current investigator, recounted that around the time of her husband’s
murder, appellee made outcry statements that she had been sexually assaulted
ten days before the murder.  It was a theory of the defense that the rapist later
returned and murdered Roy McCaleb.  The vehicle in which the sexual assault
allegedly occurred apparently had never been processed for evidence by the
Houston Police Department (“HPD”) and presumably was no longer available for
such processing.  Allen reported that records pertaining to appellee’s outcry
to a fellow employee were unavailable.

Allen testified that medical records were also not available
regarding a worker’s compensation claim McCaleb made not long before his death. 
According to Allen, this evidence would have been relevant to rebut the State’s
theory that appellee’s motive for murdering McCaleb was to collect life
insurance proceeds because the expected workers’ compensation recovery called
into question the alleged motive.

Allen further discussed several other problematic witnesses:
Carl Fuller, who was at appellee’s house on the day of the murder, had a “bad”
memory;  Gary Bunker, who “heard gunshots and some voices” on the night of the
shooting, was now deceased; Harry Krater, a former next door neighbor whom
appellee reportedly “told . . . everything,” could not be located.  Allen concluded
by stating that he had not seen any “newly discovered facts, witnesses, [or]
physical evidence” in the case since 1985.

Jon DeFrance, a neuropsychologist and neuroscientist,
testified regarding appellee’s mental faculties, her ability to testify, and
her ability to aid counsel in her defense.  Specifically, he stated that
compared to her abilities in 1986, she would now be at a “tremendous
disadvantage” in terms of assisting her counsel at trial.  DeFrance performed
an in-depth evaluation of appellee and concluded that she had “deficits”
compared to age norms in four areas:  processing speed, memory, attention, and
“executive functioning”; the latter facility DeFrance described as a “general
control over the person’s behavior.”  He said that appellee reported suffering
a “very significant head trauma” when she was in high school and that this event
might explain her comparatively decreased functioning.  DeFrance additionally
suggested that appellee should not testify due to the inherent stress involved,
coupled with her propensity to become confused and her lack of memory
precision.  He acknowledged, however, that she was competent to stand trial.

Appellee’s son, Lloyd Gregory Krizan, testified that
before retirement he was an HPD lieutenant.  He explained that appellee’s
mental abilities, including her memory, have progressively deteriorated since
1985.  He said, for example, that she regularly repeats herself and cannot
“tell a story and keep her facts straight.”

Robert Parrish, one of the homicide investigators who
worked on the murder investigation in 1985, testified that appellee was not
arrested for or charged with McCaleb’s murder at that time because the police
investigators and the assistant district attorney (“A.D.A.”) assigned to the
case “were all in agreement [that] they just didn’t have enough to go forward
with a winnable case.”  He did not believe that any additional evidence
regarding the case had been developed in the intervening years despite
additional forensic testing.  He denied that the delay in prosecution was for
the purpose of gaining a tactical advantage or to be unfair to appellee. 
Lastly, he stated that his opinion with regard to whether murder charges should
be brought against appellee had not changed.

D.S. Wilker testified that she is a retired police officer
who had been “brought back” to work on the HPD Cold Case Squad.  In 2007, Wilker
reexamined the McCaleb murder case.  She requested that DNA testing be
performed on certain evidence, but no new evidence was developed.  She did not
bring the case to the attention of the district attorney’s office or otherwise
seek to have charges filed.

Victor Wisner testified that he formerly worked at
the Harris County District Attorney’s Office.  He stated that while he was
there, Wilker regularly contacted him regarding cold case files.  When she
called him regarding the McCaleb murder investigation, they arranged a meeting
with the two of them, a D.A.’s office investigator, a police captain, and a police
lieutenant.  After that meeting, Wisner decided to file murder charges against
appellee.  He understood that the original A.D.A. on the case in 1985 did not
think the case was worth pursuing but that he [Wisner] and two other current
A.D.A.s believed otherwise.  According to Wisner, the police captain who
attended the meeting explained that charges were not filed in 1985 because of a
perceived inability to disprove appellee’s version of events (i.e., that
the rapist who had previously attacked her returned and murdered her husband). 
Wisner felt this concern to be unimportant; he thought that the case against
appellee was “a lot better than a lot of cases that are tried here every day.” 
He stated that in 1985 prosecutors filed a “ludicrous bigamy case” against
appellee, which was subsequently dismissed.  He opined that embarrassed
prosecutors did not wish to further pursue any case against appellee.  In his
opinion, no one in the D.A.’s office or HPD delayed the case in order to gain a
tactical advantage.

At the conclusion of the hearing, the trial court
granted appellee’s motion to dismiss.  In comments accompanying the ruling, the
trial judge concentrated on the Fifth Amendment due process issue.  The court
further suggested that if the charges proceeded to trial, appellee would be denied
effective assistance of counsel due to the loss of evidence and the loss of
appellee’s ability to effectively communicate with counsel.

After the hearing, the trial court entered findings
of fact as follows:  DeFrance was an expert, and based on his testimony,
appellee’s mental state had deteriorated more rapidly than average, rendering
her “effectively unable to testify,” and “severely disadvantaged in assisting
her counsel.”  Greg Krizan’s testimony was credible concerning appellee’s mental
deterioration and lessened ability to recall details.  Based on Allen’s
testimony, Thompson (appellee’s former counsel) and McDonald (the forensic
examiner hired by Thompson) were deceased, and Gonzalez (appellee’s former
investigator) did not recall the work he performed on the case.  Various items
relating to Thompson’s representation and Gonzalez’s investigation had been
lost, as had medical records relating to appellee and McCaleb.  Other potential
witnesses, including Fuller, Bunker, and Krater, were either deceased, unable
to be found, or suffering from poor memory.  Based on Wilker and Wisner’s
testimony, HPD had conducted no additional investigation and had discovered no
new evidence since “1985 or 1986.”  The State was prosecuting appellee despite
prosecutors’ knowledge that evidence favorable to the defense had been lost or
destroyed and that “the original lead investigator [apparently meaning Parrish]
still feels the charges should not have been filed due to lack of evidence.”

The court also entered conclusions of law:  Appellee
had “suffered both presumptive and actual substantial prejudice due to the
delay in filing this charge,” and such delay was “for the purpose of gaining a
tactical advantage . . . at trial.”  The delay violated appellee’s rights to (1)
due process under the Fifth and Sixth Amendments; (2) a fair trial and
effective assistance of counsel under the Sixth Amendment; (3) due course of
law under article I, section 19 of the Texas Constitution and the Code of
Criminal Procedure; (4) testify pursuant to the Fifth Amendment; and (5) call
witnesses under the Sixth Amendment.  The court further determined that the legal
doctrine of laches barred the charges because of the State’s delay in seeking
an indictment.

II.  Standards of Review

            In
its sole issue on appeal, the State contends that the trial court erred in
dismissing the indictment.[1] 
We review a trial court’s dismissal of an indictment under a bifurcated
standard.  See State v. Moff, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004);
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We afford
almost total deference to a trial court’s determination of historical facts
that are supported by the record, particularly when such findings of fact are
based on an evaluation of witnesses’ credibility and demeanor.  Guzman,
955 S.W.2d at 89.  We afford the same amount of deference to a trial court’s “application
of law to fact” rulings, when those rulings turned on an evaluation of
credibility and demeanor.  Id.  However, when resolution of a question
of law does not turn on an evaluation of credibility and demeanor, we review
the issue under a de novo standard.  Moff, 154 S.W.3d at 601.

III.  Due Process

The state has challenged all of the grounds for
dismissal mentioned by the trial court in its findings of fact and conclusions
of law.  Allegations of constitutional violations based on a time gap between
offense and indictment are typically analyzed as Fifth Amendment due process
issues.  See, e.g., United States v. Lovasco, 431 U.S. 783, 789
(1977); United States v. Marion, 404 U.S. 307, 322 (1971); Ibarra v.
State, 11 S.W.3d 189, 193-94 (Tex. Crim. App. 1999).  We will therefore
begin our analysis with the State’s challenge to the due process ground for dismissal.

Statutes of limitations are the primary assurance
against the bringing of unduly stale criminal charges.  Marion, 404 U.S.
at 322; Ibarra, 11 S.W.3d at 193.  However, the Texas legislature has
not enacted a statute of limitations for the offense of murder.  Ibarra,
11 S.W.3d at 193.  The Due Process Clause also provides some measure of protection
against excessive pre-indictment delay.  Lovasco, 431 U.S. at 789; Marion,
404 U.S. at 324-25; Ibarra, 11 S.W.3d at 193.  In Marion, the
United States Supreme Court acknowledged the existence of such protection but
resisted the call to set specific guidelines, stating that:

[T]he Government concedes that the Due Process Clause of
the Fifth Amendment would require dismissal of the indictment if it were shown
at trial that the pre-indictment delay in this case caused substantial
prejudice to appellees’ rights to a fair trial and that the delay was an
intentional device to gain tactical advantage over the accused.  However, we need not, and could not now, determine when
and in what circumstances actual prejudice resulting from pre-accusation delays
requires the dismissal of the prosecution.  Actual
prejudice to the defense of a criminal case may result from the shortest and
most necessary delay; and no one suggests that every delay-caused detriment to
a defendant's case should abort a criminal prosecution.  To accommodate the sound administration of justice to
the rights of the defendant to a fair trial will necessarily involve a delicate
judgment based on the circumstances of each case.  It would be
unwise at this juncture to attempt to forecast our decision in such cases.

404 U.S. at 324-25.

In Lovasco, the Court explained that “Marion
makes clear that proof of prejudice is generally a necessary but not sufficient
element of a due process claim, and that the due process inquiry must consider
the reasons for the delay as well as the prejudice to the accused.”  431
U.S. at 790.  The court then went on to criticize the court of appeals in that
case for holding that the State’s reasoning did not justify the delay, stating:

Judges are not free, in defining “due process,” to impose
on law enforcement officials our “personal and private notions” of fairness and
to “disregard the limits that bind judges in their judicial function.”  Our
task is more circumscribed. We are to determine only whether the action
complained of here, compelling respondent to stand trial after the Government
delayed indictment to investigate further violates those “fundamental
conceptions of justice which lie at the base of our civil and political
institutions,” . . . and which define “the community’s sense of fair play and
decency” . . . .

Id. (quoting Rochin v.
California, 342
U.S. 165, 170 (1952), and Mooney v. Holohan, 294 U.S. 103, 112 (1935)).  The Lovasco court additionally wrote at
length regarding the possible merits of leniency toward prosecutorial delay,
including that requiring prosecutors to bring charges quickly could (1) limit
the State’s ability to further investigate the suspect’s culpability, (2) impair
investigation of other possible suspects, and (3) pressure prosecutors into filing
charges that they might not otherwise file.  Id. at 790.  The
court further explained that:

In our view, investigative delay is fundamentally unlike
delay undertaken by the Government solely “to gain tactical advantage over the
accused,” precisely because investigative delay is not so one-sided.  Rather
than deviating from elementary standards of “fair play and decency,” a
prosecutor abides by them if he refuses to seek indictments until he is
completely satisfied that he should prosecute and will be able promptly to
establish guilt beyond a reasonable doubt.  Penalizing prosecutors who defer
action for these reasons would subordinate the goal of “orderly expedition” to
that of “mere speed.”  This the Due Process Clause does not require.  We
therefore hold that to prosecute a defendant following investigative delay does
not deprive him of due process, even if his defense might have been somewhat
prejudiced by the lapse of time.

Lovasco, 431 U.S. at
795-96.

Neither the Marion nor the Lovasco
opinions defined a specific methodology for considering allegations of due
process violations based on pre-indictment delay.  Instead, such development
appears to have been intentionally left for the lower courts.  The federal
circuits are, in fact, split regarding the proper methodology.  The Ninth
Circuit, among others, holds that a defendant in such cases has the initial
burden to demonstrate that the delay has caused him “actual and substantial
prejudice”; the State must then proffer a reason for the prosecutorial delay,
and the court balances the given reason against the severity of the prejudice. 
See, e.g., U.S. v. Moran, 759 F.2d 777, 782-83 (9th Cir. 1985).  In contrast,
the Fifth Circuit, and others, currently hold that in order to be entitled to
relief under the Due Process Clause for pre-indictment delay, a defendant must demonstrate
that such delay:  (1) caused substantial prejudice to his or her right to a
fair trial, and (2) was an intentional device used to gain a tactical advantage
over the accused “or for some other impermissible, bad faith purpose.”  See,
e.g., Crouch v. State, 84 F.3d 1497, 1514 (5th Cir. 1996).[2]

The Texas Court of Criminal Appeals has largely
adopted the Fifth Circuit methodology, holding that to be entitled to relief, a
defendant must demonstrate that pre-indictment delay:  “(1) caused substantial
prejudice to his right to a fair trial, and (2) was an intentional device used
to gain a tactical advantage over the accused.”  Ibarra, 11 S.W.3d at
193 (citing Marion and Spence v. State, 795 S.W.2d 743, 749 (Tex.
Crim. App. 1990)).  Although the court in Ibarra did not expressly state
that it was adopting the additional “other impermissible, bad-faith purposes”
language from Crouch, it stated in an operative sentence that:  “nothing
in the record suggests the State intentionally delayed the case to gain a
tactical advantage over appellant or otherwise acted in bad faith.”  Id.
(emphasis added).  Thus far, neither the Court of Criminal Appeals nor the
Fifth Circuit has defined what other reasons for delay might be considered “in
bad faith.”  See Crouch, 84 F.3d at 1514 (“We need not now attempt to
catalogue all possible ‘other’ impermissible, bad faith purposes of intentional
delay, although Marion indicates that a purpose ‘to harass’ the
defendant would be included.  As suggested by Marion
and Lovasco, we leave that to further case-by-case development.”).

The case currently before us presents interesting
circumstances for application of the Fifth Circuit and Texas two-prong test.  After
twenty-three years of delay, no new evidence was uncovered.  Appellee was
indicted after a different prosecutor simply looked at the case and disagreed
with the earlier decision not to prosecute.  Meanwhile, the only developments
in the case have been the death of witnesses and defense counsel, the loss of
evidence, and the mental deterioration of the defendant.

The State has conceded that appellee met the first
prong of the test by demonstrating that the twenty-three year delay between the
offense and the filing of charges has caused substantial prejudice to her
defense efforts.  However, we agree with the State that there is no evidence in
this case that the delay was intended to gain a tactical advantage over
appellee or for another improper purpose.  Instead, the only evidence regarding
the prosecutorial gap indicated that the original prosecutor and police
investigators did not believe the case to be winnable.  A later prosecutor,
Wisner, believed that the case was worth pursuing based on the 1985 evidence. Even
though the delay was apparently not for investigative purposes, appellee failed
to meet her burden of showing an intentional delay for tactical advantage or
other bad faith purpose.

There is no requirement in Texas that a continuous investigation
take place.  See Ibarra, 11 S.W.3d at 193 (“We are unaware of any
requirement that the police conduct continuous investigation.”).  Many courts
have held that the defendant must produce solid evidence of intentional delay
for an improper purpose, not just conjecture.  In Crouch, the court held
that a delay occasioned by a lack of funding for investigators was not
intentional delay for an improper purpose.  84 F.3d at 1514.  In Ibarra,
the court held that no due process violation occurred when a procedural legal
rule (concerning search warrants) changed, making certain evidence available
that was not available under the prior rule.  11 S.W.3d at 191-93.  The court
likened the situation to one wherein advances in DNA testing made previously
unavailable information accessible.  Id. at 193-94.  In Stoner v.
Graddick, the Eleventh Circuit affirmed a lower court’s denial of habeas
corpus because the defendant failed to show that the State delayed prosecution
for nineteen years in order to gain a tactical advantage.  751 F.2d 1535, 1543
(11th Cir. 1985).  The only evidence regarding the reason for the delay was
inconclusive: a retired police officer testified that he did not know why the
case had not been prosecuted earlier.  Id.  The trial court concluded,
and the appellate court apparently concurred, that the original prosecutors
simply must have doubted the sufficiency of the evidence to prosecute.  Id. 
In United States v. Procter, the Fifth Circuit rejected an assertion
that bad faith was manifest from the fact that prosecutors “had all the
evidence to prosecute” almost five years before filing charges.  505 F.3d 366,
370 (5th Cir. 2007).  The court stated that bad faith cannot be implied “simply
from the fact of the delay.”  Id.  In Grimaldo v State, the court
held that the defendant failed to meet his burden because “although no good
reason [was] apparent from the record for the delay, likewise the record [did]
not show any bad faith reason for the delay.”  No. 07-99-0006-CR, 2000 WL 798800,
at *3 (Tex. App.—Amarillo June 21, 2000, no pet.) (not designated for
publication).  Lastly, in Pelkey v. State, this court held that the
defendant failed to meet his burden where a set of prosecutors examining “cold
cases” decided to prosecute where police had originally believed that
prosecutors would not accept the case.  No. 14-00-00904-CR, 2002
WL 192346, at *2 (Tex. App.—Houston [14th Dist.] Feb. 7, 2002, pet. ref’d)
(not designated for publication).[3]

Based on these
cases, we hold that as a matter of law the evidence in the present case does
not establish that the prosecutorial delay was an intentional
device used to gain a tactical advantage over the accused or for other bad
faith purposes.  See Ibarra,
11 S.W.3d at 193.  Whether Wisner’s testimony is believed or disbelieved, there
is still no evidence of intentional delay to gain an advantage.  Accordingly,
the trial court erred in dismissing the indictment on the ground
that appellee’s due process rights were violated by the pre-indictment delay.[4]

IV.  Other Bases for Relief

            The
following additional rights were referenced by the trial court as bases for
dismissing the indictment:  (1) to enjoy due course of law under article I,
section 19 of the Texas Constitution; (2) to receive effective representation
under the Sixth Amendment and article I, section 10 of the Texas Constitution; (3)
to testify and present a defense, as guaranteed by the Fifth and Sixth
Amendments, article 1, sections 10 and 19 of the Texas Constitution, and the Texas
Code of Criminal Procedure; and (4) to receive a fair trial pursuant to the
Sixth Amendment.  Additionally, the court determined that the indictment was
barred by the doctrine of laches.[5]

A.  Due Course of Law

The State contends that
the trial court erred in finding a violation of appellee’s right to due course
of law under article I, section 19 of the Texas Constitution.  We have
previously held that in cases of pre-indictment delay, the appropriate due
course of law analysis is the same as that for due process.  State v. Kuri,
846 S.W.2d 459, 471 (Tex. App.—Houston [14th Dist.] 1993, pet. ref’d). 
Accordingly, based on our due process analysis above, we hold that appellee’s
right to due course of law was not violated by the delay in this case.  The trial
court erred in holding otherwise.

B.  Effective Representation

Next, the State argues that the trial court erred in finding
a violation of appellee’s right to effective representation of counsel.  A
criminal defendant is entitled to “the effective assistance of counsel.”  Strickland
v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v.
Richardson, 397
U.S. 759, 771, n. 14 (1970)).  The trial court found that the
State’s pre-indictment delay violated appellee’s right to counsel due to the
loss of evidence and her inability to effectively communicate.  But the right
to counsel as defined by the Supreme Court focuses on the provision and performance
of counsel and not on assurances regarding the state of the evidentiary case with
which a defendant’s attorney has to work.  See generally id. at 685-86
(explaining that the right to counsel guaranties representation by counsel,
that defense counsel will provide “adequate legal assistance,” and that the
government may not interfere with counsel’s decision-making).

Prejudice resulting from pre-indictment prosecutorial
delay may implicate due process concerns.  See Crouch, 84 F.3d at
1514; Ibarra, 11 S.W.3d at 193-94.  Yet we discern no basis for the
dismissal of an indictment on the ground that prejudice flowing from a
pre-indictment delay unconstitutionally affected a defendant’s right to counsel. 
Consequently, the trial court erred in dismissing the indictment on the ground
that appellee’s right to counsel was violated.

C.  Testify and Present a Defense

The State additionally challenges the trial court’s
holding that the delay in prosecuting this case violated appellee’s rights to
testify and to present a defense.  To support her claim of violation of these
particular rights, appellee introduced evidence of her inability to testify,
the death or disappearance of witnesses, and the loss or destruction of certain
physical evidence.  Appellee has cited a number of sources—the Fifth and Sixth
Amendments to the United States Constitution; article 1, sections 10 and 19 of
the Texas Constitution; and the Texas Code of Criminal Procedure—to establish
her unassailable right to testify and to present a defense.  See generally Rock
v. Arkansas, 483 U.S. 44, 49-53 (1987) (right to testify); Crane v.
Kentucky, 476
U.S. 683, 690-91 (1986) (right to present a defense).  She has not,
however, cited any authority, and we have discovered none, suggesting that such
rights are implicated by pre-indictment delay.

The rights to testify and to present a defense typically
apply in specific and well-developed contexts, often involving prohibitions
against direct government action which prevent exercise of the given rights.  For
example, in Crane the Supreme Court cited the right to present a defense
in holding that in the absence of “valid state justification,” a State’s
evidentiary rules could not “exclude competent, reliable evidence bearing on
the credibility of a confession when such evidence is central to the
defendant’s claim of innocence.”  476 U.S. at 690-91.  Similarly, in Rock,
the Court cited the right to testify in holding that a state could not by per
se rule prevent a defendant from testifying on his own behalf after he had
undergone hypnosis to refresh his memory.  483 U.S. at 56-62.

Here, appellee is not complaining that the State or
the trial court would directly prevent her from testifying or from presenting certain
evidence or questioning certain witnesses.  Rather, her arguments are premised
on the notion that the very lapse of time between offense and indictment
(occasioned by the State’s inaction) will prevent her from testifying and
presenting a defense.  Although pre-indictment delay may implicate due process
concerns, see Crouch, 84 F.3d at 1514; Ibarra, 11 S.W.3d
at 193-94, we do not believe that the rights to testify and present a defense
require dismissal of an indictment based solely on delay in bringing an
indictment.  Accordingly, the trial court erred in dismissing the indictment based
on alleged violations of appellee’s rights to testify and present a defense.

D.  Fair Trial

The State also challenges the trial court’s holding
that the delay violated appellee’s Sixth Amendment right to a fair trial.  It
is uncertain on this record whether appellee or the court considered the Sixth
Amendment as providing a basis for the dismissal not covered by other grounds
more specifically mentioned, i.e., the Fifth Amendment due process
argument and the rights to testify, to present a defense, and to effective
representation all discussed above.  In her appellate briefing, the only
arguments appellee has made regarding violation of her Sixth Amendment right to
a fair trial are that (1) she was prejudiced by the delay and (2) “the charges
are overly stale.”  These arguments are more appropriately analyzed in the
context of Fifth Amendment due process rights.

Furthermore, the only case appellee cites in support of
her fair trial appellate arguments is the Supreme Court’s opinion in United
States v. Marion, 404 U.S. 307 (1971).  In Marion, the Court
declined to extend Sixth Amendment protections to the period prior to arrest.  Id.
at 321.  Instead, the Court indicated that pre-indictment delay should be
analyzed under the Fifth Amendment right to due process.  Id. at 324.  The
trial court erred in dismissing the indictment on the basis of the Sixth
Amendment right to a fair trial.

E.  Laches

Lastly, the State challenges the trial court’s
holding that the indictment of appellee was barred by application of the
doctrine of laches.  In Ex Parte Carrio, the only case appellee cites, the
Texas Court of Criminal Appeals held that the doctrine of laches should be
utilized in determining whether to consider a post-conviction application for
writ of habeas corpus where the applicant’s delay in filing the application prompted
the State to claim prejudice to its ability to respond.  992 S.W.2d 486, 487-88
(Tex. Crim. App. 1999).[6]

Carrio is not a pre-indictment delay case.  In it,
the court followed the federal practice of using laches to assess the consequences
of delay in applications for writ of habeas corpus.  Id. at 487.  This
is a very narrow use of this equitable doctrine.  There is no suggestion in the
opinion that the doctrine should apply in any other criminal context.  We see
no reason to extend use of the doctrine into the realm of pre-indictment delay,
where the Court of Criminal Appeals has already set forth a test governing our
analysis.  See Ibarra, 11 S.W.3d at 193-94.  For this reason, we find
that the trial court erred in dismissing the indictment pursuant to the
doctrine of laches.

V.  Conclusion

For the reasons stated above, we hold that each of
the grounds cited by the trial court in dismissing the indictment is without
merit.  Consequently, the trial court erred in dismissing the indictment.  We
sustain the State’s sole issue on appeal.

We reverse the trial court’s order of dismissal and
remand for further proceedings in accordance with this opinion.

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Anderson and Christopher.

Publish
— Tex. R. App. P. 47.2(b).









[1] In its “Issue Presented,”
the State specifically stated:  “Did the trial court err in determining the
State intentionally delayed this prosecution in bad faith simply because it
indicted appellee 22 years after the offense?”  But as will be discussed in this
opinion, between its initial appellate brief and reply brief, the State has
briefed each of the issues listed by the trial court as bases for dismissing
the indictment.  In her brief, appellee urges that we find that the State
waived its arguments on certain grounds for dismissal by not raising them in
its original brief.  In our discretion, we will treat the State’s reply brief
as a supplemental brief, under Texas Rule of Appellate Procedure 38.7, and
consider all of the arguments raised.  See Boyle v. State, 820 S.W.2d
122, 141 (Tex. Crim. App. 1999) (“Whether to discuss new matters raised in a
supplemental brief is left to the sound discretion of the court.”); Houston
v. State, 286 S.W.3d 604, 612 (Tex. App.—Beaumont 2009, pet. ref’d)
(treating reply brief as supplemental brief under Rule 38.7); Skillern v.
State, 890 S.W.2d 849, 882 (Tex. App.—Austin 1994, pet. ref’d) (exercising
discretion to consider newly raised matter).  The State filed the reply brief
prior to submission and oral argument, and both sides fully briefed the issues.





[2] The Fifth Circuit had
previously used the balancing test but in Crouch specifically adopted
the two-pronged test, requiring the defendant to prove both prongs.  84 F.3d at
1514; see also Stoner v. Graddick, 751 F.2d 1535, 1542 n.4 (11th Cir.
1985) (discussing the early inconsistency in Fifth Circuit methodology).





[3] As unpublished cases, Pelkey
and Grimaldo do not compel our resolution in this case; however, they
provide additional context in which to view the state of the law in this area
of due process analysis.





[4] Under the Ninth Circuit’s
methodology, the result in this case might be different from that which we
reach under the two-prong Texas and Fifth Circuit analysis.  Under the Ninth
Circuit balancing test, appellee has demonstrated actual and substantial
prejudice, the State has proffered no reason for the delay other than that the
prosecutor and police at one time did not believe that they had enough evidence
to prosecute, and the balance could tip toward finding a due process
violation.  See Moran, 759 F.2d at 782-83.





[5] The State asserts that
the trial court based the dismissal of the indictment solely on findings that
the delay violated appellee’s due process rights and right to effective
representation.  However, because the trial court entered findings of fact and
conclusions of law supporting the dismissal on several additional grounds, the
State’s assertion is clearly incorrect.  The State briefed the merits of each
of the additional grounds, and we will address each on the merits.





[6] The Carrio court
referenced Black’s Law Dictionary in defining the doctrine:

The doctrine of laches is
based upon the maxim that equity aids the vigilant and not those who slumber on
their rights.  It is defined as neglect to assert right or claim which, taken
together with lapse of time and other circumstances causing prejudice to an
adverse party, operates as a bar in a court of equity.  Also, it is the neglect
for an unreasonable and unexplained length of time under circumstances
permitting diligence, to do what in law, should have been done.

992 S.W.2d at 487 n.2 (quoting Black’s Law Dictionary
875 (6th ed. 1990)).