# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-18-00260-CR[1]

**Ronald Rudolph Rodriguez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2015-395, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Our opinion and judgment issued on July 24, 2018, are withdrawn, and the following

opinion is substituted.

Ronald Rudolph Rodriguez was charged with possession of a controlled substance

(methamphetamine) in a correctional facility and with possession of less than one gram of a

controlled substance (methamphetamine). *See* Tex. Penal Code § 38.11(d), (g) (setting out offense

---

[1] The notice of appeal for this case was originally filed in this Court in September 2016, and the case was transferred to the El Paso Court of Appeals later that same month in compliance with a docket-equalization order issued by the supreme court. *See* Tex. Gov't Code § 73.001 (authorizing transfer of cases). In April 2018, the supreme court issued another order transferring back to this Court this case and thirty-eight other cases that had also been previously transferred to the El Paso Court and that had not yet reached a final disposition. *See* Misc. Docket No. 18-9054, Transfer of Cases from Courts of Appeals (Tex. Apr. 12, 2018).

of possession in correctional facility and stating that offense is third-degree felony); Tex. Health & Safety Code §§ 481.102(6), .115(a)-(b) (governing offense of possession of less than one gram of methamphetamine and providing that offense is state-jail felony). The indictment also contained two enhancement paragraphs alleging that Rodriguez had previously been convicted of two felony offenses. *See* Tex. Penal Code §§ 12.42(d) (raising punishment range for felony offense if defendant has previously been convicted of two felony offenses), .425(b) (elevating punishment range for state-jail felony to that of second-degree felony if defendant has previously been convicted of two felony offenses). At the start of the trial, Rodriguez pleaded not guilty to the offense of possessing a controlled substance in a correctional facility but pleaded guilty to the offense of possessing methamphetamine. During the guilt-or-innocence phase, the jury found Rodriguez guilty of possession in a correctional facility. At the end of the punishment phase, the jury found the enhancement allegations to be true and assessed Rodriguez's punishment for the charge of possession in a correctional facility at life imprisonment and for the charge of possession of a controlled substance at twenty years' imprisonment, and the district court rendered its judgment of conviction in accordance with the jury's verdicts. *See id.* §§ 12.33 (listing punishment range for second-degree felony), .42(d) (setting out punishment range for felony offense when defendant has been previously convicted of two felonies). In three issues on appeal, Rodriguez contends that there was error in the jury charge, that he was provided with ineffective assistance of counsel, and that one of the enhancement allegations was improperly included in the jury charge. We will reverse the district court's judgments of conviction and remand for a new punishment hearing.

## BACKGROUND

As set out above, Rodriguez was charged with possessing methamphetamine in a correctional facility and with possessing less than one gram of methamphetamine, and he pleaded guilty to the latter offense. The indictment contained enhancement paragraphs alleging that Rodriguez was previously convicted of the felony offenses of theft and forgery. During the guilt-or-innocence phase, the State called various law-enforcement officials to the stand.

First, Officer Justin Garcia explained that he was working "as an asset protection associate" for a store on the day in question, that he observed Rodriguez grab "an 18-pack of beer," and that he saw Rodriguez attempt to leave the store without paying for the beer. Next, Officer Jason Tucker was called to the stand and related that Rodriguez was taken into custody and driven to jail, and in his cross-examination, Officer Tucker explained that he indicated on his report about the incident that Rodriguez was intoxicated. Then, Officer John Mahoney testified that he drove Rodriguez to jail and that Rodriguez seemed coherent on the trip to jail and asked Officer Mahoney to issue him a ticket rather than arrest him. After Officer Mahoney finished testifying, Officer Gilbert Serna related that he asked Rodriguez at the jail if Rodriguez had any weapons or contraband on him and that Rodriguez denied carrying any contraband, and Officer Serna also testified that he found during a pat-down search "a white bag with a clear crystal substance" inside Rodriguez's shirt pocket. Similarly, Officer Chris Stanley testified that he inventoried Rodriguez's wallet after Rodriguez was brought to jail and that there "was a white powdery substance" inside the wallet. Finally, Officer Jeffrey Keverline was called to the stand and testified that he is "a controlled substance analyst," that he tested the substances found during the pat-down search of Rodriguez

3

and during the search of his wallet, that both substances were methamphetamine, that one of the substances had a mass of 0.11 grams, and that the other substance had a mass of 0.14 grams.

During the punishment phase, the State called several witnesses to testify regarding prior offenses purportedly committed by Rodriguez, including the two offenses listed as enhancements in the indictment, and regarding offenses that allegedly occurred after the offenses at issue. After the witnesses finished testifying, the jury assessed Rodriguez's punishment, and the district court rendered its judgment of conviction. Rodriguez appeals the district court's judgments of conviction.

## DISCUSSION

In his first issue on appeal, Rodriguez contends that the district "court erred in including the culpable mental state of 'reckless' in the jury charge." In his second issue on appeal, Rodriguez argues that he was denied effective assistance of counsel. In his final issue on appeal, Rodriguez asserts that the district court erred by including one of the enhancement allegations in the jury charge.

### Jury Charge

The indictment in this case alleged, in relevant part, that Rodriguez "did then and there intentionally or knowingly possess a controlled substance, to-wit: Methamphetamine, on property owned, used[,] or controlled by a correctional facility, to-wit: the Comal County Jail." In contrast, the portion of the jury charge pertaining to possession of a controlled substance in a correctional facility specified as follows: "Our law provides that a person commits an offense if he intentionally, knowingly, or recklessly possesses a controlled substance while on property owned,

4

. . . used, or controlled [by] a correctional facility." Further the charge provided the complete statutory definitions for the terms intentionally, knowingly, and recklessly. *See* Tex. Penal Code § 6.03. Moreover, in the application section, the charge instructed the jury as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that . . . Rodriguez . . . did then and there intentionally, knowingly, or recklessly possess . . . [m]ethamphetamine, on property owned, used[,] or controlled by a correctional facility, to-wit: the Comal [C]ounty jail, the[n] you will find [Rodriguez] guilty of the offense of Prohibited Substance in a Correctional Facility.

On appeal, Rodriguez contends that the inclusion of a reckless mental state was improper for several reasons. First, Rodriguez argues that "'Reckless Possession of a Controlled Substance' is [n]ot an [o]ffense" under the Penal Code. Although the statutory provision forbidding possession in a correctional facility does not specify what culpable mental state is required for an offense, *see id.* § 38.11(d), Rodriguez insists that only intentional or knowing conduct can constitute an offense and points to statutes and case law governing the offense of possession of a controlled substance as support for this proposition, *see, e.g., id.* § 1.07(a)(39) (defining "[p]ossession); Tex. Health & Safety Code § 481.115(a) (setting out offense of possession of controlled substance); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005) (setting out requirements for proving "unlawful possession of a controlled substance"), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015).

Additionally, Rodriguez argues that "[e]ven if reckless possession were an offense under the laws of this [S]tate," the indictment did not charge him for that offense and that including recklessness in the jury charge but not in the indictment deprived him "of [n]otice of the [a]ct or

5

[a]cts [r]elied [u]pon to [c]onstitute '[r]ecklessness.'" *See* Tex. Code Crim. Proc. art. 21.15 (explaining that if "it is charged that the accused acted recklessly," indictment "must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness").

For purposes of resolving this issue on appeal, we will assume without deciding that the inclusion of a mental state of recklessness was error. If an appellate court determines that there is error present in a jury charge, it must then evaluate the harm caused by the error. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If the defendant made a timely objection, reversal is required if there has been "*some* harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). However, if no objection was made, a reversal is warranted only if the error "resulted in 'egregious harm.'" *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008) (quoting *Almanza*, 686 S.W.2d at 171).

In this case, Rodriguez contends that this Court should determine whether there was some harm stemming from the error because he objected to the inclusion of the reckless mental state, but the State contends that this Court should address whether Rodriguez was egregiously harmed because he failed to properly object to the jury instructions.[2] For purposes of resolving this

---

[2] In its brief, the State also asserts that Rodriguez is prohibited "from complaining" about the instructions because Rodriguez requested that the changes to the jury instructions be made. Given our ultimate resolution of this issue on appeal, we need not decide whether the doctrine of invited error applied in this case. *See Druery v. State*, 225 S.W.3d 491, 505-06 (Tex. Crim. App. 2007) (explaining that defendant was estopped on appeal from complaining about absence of lesser-included instruction when defendant asserted during trial that he did not want lesser instruction). However, we do note that it appears from the record that Rodriguez only agreed to certain changes

6

issue on appeal, we will assume for the sake of argument that Rodriguez objected to the inclusion of a reckless mental state in the abstract and application sections of the jury charge. Accordingly, we will analyze whether Rodriguez suffered some harm by the inclusion of the reckless mental state.

In this type of analysis, reviewing courts "consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Although the standard is less stringent than the analysis performed when an objection is not made, the reviewing court must still "find that the defendant 'suffered some actual, rather than merely theoretical, harm from the error.'" *Id.* (quoting *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)). If there has been an objection, a reversal is warranted when the error is "calculated to injure the rights of the defendant." *Id.* (quoting *Almanza*, 686 S.W.2d at 171).

As set out above, the jury charge included the mental state of recklessness in the abstract section as well as in the application section setting out the offense, and the charge also included a definition of recklessness in the abstract section. Moreover, the State mentioned once during its closing arguments that the jury could find Rodriguez guilty if they found that he "intentionally, knowingly, or recklessly" possessed methamphetamine at the jail.

However, neither the State nor Rodriguez suggested that the evidence indicated that Rodriguez recklessly possessed the methamphetamine. Although Rodriguez argued in his opening argument that he forgot that the drugs were in his possession because he was drunk at the time of his

after the district court considered Rodriguez's objection to the inclusion of a lesser-included-offense instruction and determined that a lesser instruction with a reckless mental state could be given.

arrest, he did not argue that he recklessly obtained possession of the methamphetamine. Instead, Rodriguez argued that the misconduct at issue did not fall within the purpose of the governing statute, which, according to Rodriguez, "is to address the issue of contraband . . . in the possession of prison inmates." Further, Rodriguez emphasized that he "was not a prison inmate" and that the drugs were only found as a result of "the booking process." *See Brown v. State*, 89 S.W.3d 630, 633 (Tex. Crim. App. 2002) (rejecting argument that evidence was insufficient to support conviction for possessing contraband in correctional facility because defendant was taken to correctional facility against his will after being arrested).

In addition, Rodriguez suggested that finding a defendant guilty under these circumstances will encourage police officers to not perform a thorough search with the hope of finding drugs when the defendant is taken to jail. Finally, Rodriguez argued that the State failed to meet its burden of proving the elements beyond a reasonable doubt, emphasized the small amount of contraband at issue, and urged that the State was misusing the law "to simply pile on."

In its closing, the State asserted that Rodriguez violated the law by possessing a controlled substance in a correctional facility, that Rodriguez made the decision "to possess that controlled substance," that the evidence presented at trial suggested that Rodriguez was competent and not intoxicated when he was brought to jail, that intoxication is not a defense to the charged crime in any event, that the amount of contraband possessed is not an element of the charged offense, and that Rodriguez was essentially asking the jury to ignore the law in order to find him not guilty.

More importantly, the evidence presented in this case demonstrates that Rodriguez did not suffer some harm from the allegedly erroneous jury charge. Although one of the officers

testified that he marked on his incident report that Rodriguez was intoxicated, no evidence was introduced indicating that Rodriguez recklessly possessed the methamphetamine, and another officer testified that Rodriguez was coherent and responsive. In addition, the jury was presented with evidence that police officers found two bags of methamphetamine—one in Rodriguez's shirt pocket and the other in his wallet—as a result of their search of Rodriguez at the jail and that Rodriguez pleaded guilty to knowingly or intentionally possessing one of the bags of methamphetamine. *See Brumbalow v. State*, No. 11-08-00277-CR, 2010 WL 2696712, at *1, *3 (Tex. App.—Eastland July 8, 2010, no pet.) (mem. op., not designated for publication) (determining that evidence was sufficient to support conviction for knowingly possessing methamphetamine where methamphetamine was found inside cigarette pack located inside shirt that defendant was wearing); *Riggs v. State*, No. 11-05-00012-CR, 2005 WL 2476267, at *1, *2 (Tex. App.—Eastland Oct. 6, 2005, pet. ref'd) (not designated for publication) (explaining that evidence was sufficient to support conviction for manufacturing controlled substance where defendant was found wearing shirt containing "a key ingredient for manufacturing methamphetamine"). No evidence was presented during the trial suggesting that Rodriguez's mental state as it related to the possession of the bag of methamphetamine serving as the basis for the charge of possession in a correctional facility differed from his mental state as it related to the possession offense that he pleaded guilty to.[3]

---

[3] In his brief, Rodriguez points to a prior opinion by this Court as support for the idea that he was harmed by the allegedly erroneous jury charge. *See Limon v. State*, No. 03-10-00666-CR, 2012 WL 5392160 (Tex. App.—Austin Nov. 2, 2012, no pet.) (mem. op., not designated for publication). In *Limon*, this Court determined that the inclusion of a reckless mental state in the abstract and application sections of a jury charge for the crime of cruelty to animals was erroneous because the governing statute at that time provided that a person committed an offense if he "intentionally or knowingly . . . abandons unreasonably an animal in the person's custody." *Id.* at

9

Under the unique circumstances of this case, we conclude that Rodriguez did not suffer some harm as a result of the alleged charge error. Accordingly, we overrule Rodriguez's first issue on appeal.

**Assistance of Counsel**

In his second issue on appeal, Rodriguez asserts that he "was denied the right of effective assistance of counsel throughout several critical stages of his trial: during the criminal trial itself . . . and during the time period for the filing of a motion for new trial." Regarding the trial, Rodriguez asserts that his trial "attorney presented no witnesses," admitted "no evidence of any sort," and performed "very little cross-examination" of the State's witnesses. Further, Rodriguez contends that "[t]he record reflects no motions made for funding of investigators or experts."

To succeed on an ineffectiveness claim, a defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional assistance" and must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*1, *2 (quoting Act of May 24, 2001, 77th Leg., R.S., ch. 450, § 1, sec. 42.09(a)(3), 2001 Tex. Gen. Laws 887, 887 (amended 2007) (current version at Tex. Penal Code Ann. §§ 42.09(a)(3), .092(b)(4)). Further, this Court concluded that the defendant was egregiously harmed by the jury-charge error because "[t]he erroneous inclusion of the 'recklessly' mental state was not 'corrected or ameliorated' in another portion of the charge," because the evidence suggested that the defendant's conduct could have been "reckless as opposed to intentional or knowing," and because repeated assertions to the erroneously included reckless mental state were made by the State and by the defendant during their arguments. *Id.* at *3-4 (quoting *Ngo v. State*, 175 S.W.3d 738, 752 (Tex. Crim. App. 2005)). However, in light of the significant evidentiary differences present in this case as well as the fact that references to a reckless mental state by the parties in this case were minimal, we believe that *Limon* is distinguishable from the current case.

10

*Strickland v. Washington*, 466 U.S. 668, 688, 689, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). "It will not suffice for Appellant to show 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693). "Rather, he must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland*, 466 U.S. at 695). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

"[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Evaluations of effectiveness are based on "the totality of the representation." *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (providing that assessment should consider "cumulative effect" of counsel's deficiencies). Furthermore, even though a defendant is not entitled to representation that is error-free, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 450 S.W.3d at 136; *see also Blount v. State*, 64 S.W.3d 451, 455 (Tex. App.—Texarkana 2001, no pet.) (explaining that even if "counsel's actions . . . seem imprudent in hindsight, it is not for us to second-guess her strategy"). In addition, a defendant cannot claim that his trial counsel provided ineffective assistance of counsel by failing to call witnesses unless the defendant can show that the witnesses were available

and that their testimony would have benefitted the defendant. *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Brennan v. State*, 334 S.W.3d 64, 79 (Tex. App.—Dallas 2009, no pet.); *Tutt v. State*, 940 S.W.2d 114, 121 (Tex. App.—Tyler 1996, pet. ref'd).

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim "is generally undeveloped." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) (stating that "[i]n the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions"). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Goodspeed*, 187 S.W.3d at 392 (stating that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). If that opportunity has not been provided, as in this case, an appellate court should not determine that an attorney's performance was ineffective unless the conduct at issue "was so outrageous that no competent attorney would have engaged in it." *See Garcia*, 57 S.W.3d at 440.

As set out above, no motion for new trial was filed in this case, and no allegations of ineffective assistance were presented to the district court. Accordingly, Rodriguez's trial attorney has not been afforded the opportunity to explain his reasons for not calling any witnesses to the stand and for limiting his cross-examination of the State's witnesses. *Compare Mallett*, 65 S.W.3d at 63 (providing that "[w]hen the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable"), *Villalobos v. State*, No. 03-13-00687-CR, 2015 WL 5118369, at *5 (Tex. App.—Austin Aug. 26,

12

2015, pet. ref'd) (mem. op., not designated for publication) (stating that, in general, without record evidence regarding attorney's strategy, appellate courts "cannot speculate as to whether a valid strategy existed, and thus [an] appellant cannot rebut the strong presumption of reasonable assistance"), *and Ward v. State*, No. 05-01-01790-CR, 2002 WL 31159972, at \*2 (Tex. App.—Dallas Sept. 30, 2002, pet. ref'd) (mem. op., not designated for publication) (explaining that reviewing courts "do not inquire into counsel's trial strategy unless such strategy does not have a plausible basis," commenting that record contained "no explanation for counsel's actions," and concluding that defendant had not met first *Strickland* prong "because he has not shown that counsel's performance was deficient"), *with Lair v. State*, 265 S.W.3d 580, 593-96 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (determining that new punishment hearing should be held where defendant attached affidavits from "almost two dozen witnesses" to motion for new trial "all of whom stated that they were not contacted by appellant's trial counsel and that they were ready, willing, and able to testify on appellant's behalf at the punishment stage" and where trial counsel also submitted affidavit stating that "he did not even interview th[o]se witnesses" and that "the importance of humanizing appellant to the jury outweighed the fact that the State could have had each of the witnesses acknowledge appellant's prior felony conviction"), *and Shanklin v. State*, 190 S.W.3d 154, 163-66, 168 (Tex. App.—Houston [1st Dist.] 2005) (remanding for new punishment hearing after determining that trial attorney provided ineffective assistance of counsel where affidavits from 20 witnesses were submitted as part of motion for new trial describing what witnesses' testimonies would have been and stating that trial attorney never contacted them and where trial attorney admitted in his affidavit "that he 'did not conduct any meaningful investigation'" regarding "'the punishment stage'"), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007).

Moreover, "the decision whether to present witnesses is largely a matter of trial strategy." *Harkcom v. State*, No. 02-12-00576-CR, 2016 WL 3960581, at *3 (Tex. App.—Fort Worth July 21, 2016, no pet.) (mem. op., not designated for publication). Similarly, decisions regarding ""[w]hether to cross-examine a witness and the extent of cross-examination are prime examples of trial strategy." *Barragan v. State*, No. 01-93-01137-CR, 1994 WL 719778, at *3 (Tex. App.—Houston [1st Dist.] Dec. 29, 1994, no pet.) (not designated for publication); *see also Nava v. State*, Nos. 11-12-00115—00116-CR, 2013 WL 4052560, at *4 (Tex. App.—Eastland Aug. 8, 2013, no pet.) (mem. op., not designated for publication) (stating that "[t]he extent of cross-examination does not prove ineffective assistance"); *Rubio v. State*, No. 13-03-00426-CR, 2004 WL 1698321, at *2 (Tex. App.—Corpus Christi July 29, 2004, no pet.) (mem. op., not designated for publication) (noting that "brief cross-examination of a witness may also fall within the purview of trial strategy").

In light of the undeveloped record before this Court, it is not entirely clear that the first prong of the *Strickland* test could be met here. However, even assuming for the sake of argument that the record before this Court established that the alleged failures were unreasonable in these circumstances, we are still unable to conclude that the second prong of *Strickland* has been met. Rodriguez has not demonstrated on appeal that there were witnesses that were available to testify or what their testimonies would have been. Similarly, Rodriguez has not set out what evidence would have been admitted through additional cross-examination of the State's witnesses. In the absence of any evidence in the record indicating what the testimony from the additional witnesses would have been or what evidence would have been admitted through additional cross-examination, Rodriguez's arguments amount to assertions that his trial attorney's alleged failures had a

14

conceivable effect on the outcome of the trial, which is insufficient to support a claim of ineffective assistance. *See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (cautioning reviewing courts against speculating "about the existence of" mitigating evidence and noting that "[i]neffective assistance of counsel claims are not built on retrospective speculation"); *Brennan*, 334 S.W.3d at 79 (overruling issue asserting that trial counsel was ineffective for failing to call witness to stand when defendant failed to meet his burden of establishing that witness was available).

Having determined that Rodriguez has not shown that his trial attorney provided ineffective assistance of counsel on the grounds alleged above, we need not further address the matter, but we do emphasize that ineffectiveness challenges are considered in light of "the totality of the representation" provided by the attorney. *See Thompson*, 9 S.W.3d at 813; *see also Simmons v. State*, Nos. 03-11-00229—00230-CR, 2012 WL 3629864, at *4 (Tex. App.—Austin Aug. 22, 2012, pet. ref'd) (mem. op., not designated for publication) (determining that "[t]he critical weakness" in ineffectiveness claim was "its failure to consider the totality of trial counsel's representation").

Moreover, we note that during voir dire, Rodriguez's attorney questioned the jury panel regarding factors they would consider in determining someone's sentence for drug possession, including whether the amount of the drug would be a factor; regarding the cost to incarcerate nonviolent offenders; regarding whether the State might overcharge someone; and regarding whether the panel might credit a police officer's testimony more than the testimony from someone who is not a law-enforcement officer. Further, Rodriguez's attorney emphasized the State's burden of proof and a defendant's right to not testify, and Rodriguez's attorney moved to strike several panelists for cause. In addition, during the guilt-or-innocence phase, Rodriguez's attorney cross-examined several

15

of the State's witnesses and argued during his closing arguments that the State had not met its burden of proof and that the conduct at issue in this case did not fall under the purpose of the statute prohibiting possession in a correctional facility. During his opening statement in the punishment phase, Rodriguez's attorney argued that Rodriguez's life fell apart after he became addicted to drugs and alcohol and that Rodriguez's prior offenses were all "low level, nonviolent offenses." Finally, during his closing arguments, Rodriguez's attorney emphasized the "nonviolent nature of this case," noted the small amount of methamphetamine involved, attempted to undermine the credibility of one of the State's witnesses, and suggested that the jury should consider imposing a minimal sentence.

In the absence of further information, we conclude that the totality of the representation would seem to reflect that Rodriguez was not provided with ineffective assistance of counsel during the trial.

In addition to arguing that he was denied effective assistance of counsel during the trial, Rodriguez also argues, as discussed previously, that he was denied effective assistance of counsel during the time period for filing a motion for new trial. Specifically, Rodriguez asserts that his trial counsel failed to file a motion for new trial and that by the time that his trial counsel withdrew from the case and by the time he was appointed appellate counsel, "the time for a motion for new trial had expired." Additionally, Rodriguez suggests that if he had "been able to avail himself of the remedy of a motion for new trial, he would have been able to present evidence of the shortcomings and deficient performance of [his] trial counsel on the record."

As pointed out by Rodriguez, the 30-day period of time "to file a motion for new trial after the date that the trial court imposes or suspends sentence in open court" is a "'critical stage'

16

during which a defendant is constitutionally entitled to effective assistance of counsel in filing a motion for new trial." *Cooks v. State*, 240 S.W.3d 906, 907-08 (Tex. Crim. App. 2007); *see Benson v. State*, 224 S.W.3d 485, 490 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Massingill v. State*, 8 S.W.3d 733, 737 (Tex. App.—Austin 1999, pet. ref'd). However, "where a defendant is represented by counsel during trial, [there is] a rebuttable presumption that this counsel continued to adequately represent the defendant during this critical stage." *Cooks*, 240 S.W.3d at 911; *see Benson*, 224 S.W.3d at 491. Stated differently, "when a motion for new trial is not filed in a case, there is a rebuttable presumption that the defendant was counseled by his attorney regarding the merits of the motion and ultimately rejected the option," and "this presumption will not be rebutted when there is nothing in the record to suggest otherwise." *Prudhomme v. State*, 28 S.W.3d 114, 119 (Tex. App.—Texarkana 2000, order), *disp. on merits*, 47 S.W.3d 683 (Tex. App.—Texarkana 2001, pet. ref'd); *see Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998) (discussing rebuttable presumption when no motion for new trial is filed and noting that "[t]here [wa]s nothing in the record to suggest that the attorney did not discuss the merits of a motion for a new trial with the appellant").

In this case, approximately twenty-two days after Rodriguez's conviction, Rodriguez's trial counsel filed a notice of appeal as well as a motion to withdraw in order to allow an appellate attorney to be appointed. Further, the district court did not grant the motion to withdraw until the last day for filing a motion for new trial when the district court also appointed an appellate attorney for Rodriguez. *Compare Munoz v. State*, No. 03-10-00547-CR, 2011 WL 2437665, at *2 (Tex. App.—Austin June 15, 2011, no pet.) (mem. op., not designated for publication) (concluding that presumption that defendant, "with the advice of counsel, had previously considered and rejected the

17

option of filing a motion for new trial" was not overcome where there was no evidence that trial counsel withdrew during 30-day period for filing motion for new trial), *with Cooks*, 240 S.W.3d at 911 (stating that presumption was rebutted where there was evidence "that appellant was unrepresented by counsel during the initial twenty days of the 30-day period" and where appointed appellate counsel asserted "that there was not enough time after her appointment to adequately assist appellant in deciding whether to file a motion for new trial" (internal footnote omitted)), *Bearman v. State*, 425 S.W.3d 328, 330 (Tex. App.—Houston [1st Dist.] 2010, order) (explaining that "presumption that appellant continued to be represented by trial counsel during" 30-day period for filing motion for new trial did not apply "because the record conclusively shows that he was not" where record demonstrated that trial attorney "was permitted to withdraw two weeks into the 30-day period" and that "appellate counsel was not appointed until after the 30-day period had expired"), *disp. on merits*, No. 01-08-00787, 2011 WL 2501626 (Tex. App.—Houston [1st Dist.] June 23, 2011, pet. ref'd) (mem. op., not designated for publication), *and Garcia v. State*, 97 S.W.3d 343, 348 (Tex. App.—Austin 2003, pet. ref'd) (determining that presumption had been rebutted when trial court allowed appointed counsel to withdraw at time of defendant's sentencing, when appellate counsel was not appointed until well over one month later, and when defendant filed pro se motion for new trial alleging ineffective assistance of counsel).

In light of the record before this Court, particularly the facts that Rodriguez's trial attorney did not withdraw until the last day of the 30-day period for filing a motion for new trial and that Rodriguez was appointed appellate counsel on that same day, *cf. Munoz*, 2011 WL 2437665, at *2 (observing that presumption is generally only overcome when "there is some evidence in the record that the defendant was not represented by counsel at some point during the 30-day period in

18

which to file a motion for new trial"), we cannot conclude that Rodriguez has rebutted the presumption that his trial counsel represented him effectively during the 30-day period for filing a motion for new trial and that his trial counsel discussed the option of filing a motion for new trial but that Rodriguez rejected that option.

For all of these reasons, we overrule Rodriguez's second issue on appeal.

**Enhancement Allegation**

In his final issue on appeal, Rodriguez contends that one of the enhancement allegations used to elevate his punishment range for both charges was based on a void judgment of conviction and was "therefore unavailable for enhancement of punishment."[4]  As discussed previously, the

---

[4] As an initial matter, we note that Rodriguez did not present this issue in his opening appellate brief and instead presented his arguments in a filing that he called a supplemental brief. "A brief may be amended or supplemented with the court's permission 'whenever justice requires, on whatever reasonable terms the court may prescribe,'" *Houston v. State*, 286 S.W.3d 604, 612 (Tex. App.—Beaumont 2009, pet. ref'd) (quoting Tex. R. App. P. 38.7), but no supplement was requested by this Court.  Accordingly, Rodriguez has essentially presented a new argument in a reply brief, and reply briefs are "not intended to allow an appellant to raise new issues" that were not addressed in an appellee's brief. *State v. Sanchez*, 135 S.W.3d 698, 700 (Tex. App.—Dallas 2003) (explaining that court "need not consider the matter as it is a new issue raised in the State's reply brief"), *aff'd* 138 S.W.3d 324 (Tex. Crim. App. 2004).  However, in light of the nature of Rodriguez's supplemental claim and of governing case law pertaining to challenges to the legality of sentences, we will "construe the briefing rules liberally to allow the issue to be presented as an amendment to the appellant's brief." *See Houston*, 286 S.W.3d at 612; *see also Wood v. State*, No. 01-16-00179-CR, 2017 WL 4127835, at *4, *6 (Tex. App.—Houston [1st Dist.] Sept. 19, 2017, pet. granted) (mem. op., not designated for publication) (addressing issue regarding legality of sentence that was presented for first time in reply brief because appellate courts may correct illegal sentences and reversing for new punishment hearing because trial court's sentence was illegal and void); *Bruton v. State*, No. 08-11-00316-CR, 2013 WL 4029272, at *4 (Tex. App.—El Paso Aug. 7, 2013) (not designated for publication) (commenting that "[a] new issue may not be raised for the first time in a reply brief" but addressing "arguments raised in the reply brief in the interest of justice"), *aff'd* 428 S.W.3d 865 (Tex. Crim. App. 2014).

indictment alleged that Rodriguez had been previously convicted of two felony offenses, and the jury found those enhancement allegations to be true. The relevant enhancement allegation provided that Rodriguez "was duly and legally convicted of the felony offense of THEFT, alleged to have been committed on or about the 27th day of September, 1994."

As support for the enhancement allegation, the State submitted several documents pertaining to the 1994 offense, and all of those documents contained the same cause number, specified that the defendant for the 1994 offense had the same name as Rodriguez,[5] and were admitted into evidence as exhibits during the punishment phase. The first document was the indictment for the 1994 offense, and the indictment alleged that Rodriguez committed the felony offense of theft "on or about" September 27, 1994, that the value of the property was less than $1,500, that Rodriguez had previously committed two misdemeanor theft offenses, and that Rodriguez had previously committed the felony offense of forgery. The second document was the judgment of conviction for the 1994 offense, and the judgment specified that Rodriguez was convicted of a third-degree felony for a theft that he committed on September 27, 1994, that Rodriguez was sentenced to ten years' imprisonment for the offense, that Rodriguez's punishment was "suspended," and that Rodriguez was placed on community supervision for ten years. The 1994 judgment also contained Rodriguez's thumb print, and another document submitted by the State pertaining to the 1994 offense also containing the same cause number, Rodriguez's name, and the date of conviction includes all of Rodriguez's fingerprints. The third document was the State's

---

[5] Although the documents pertaining to the 1994 conviction specify that Rodriguez's middle name was "Rudolf" or "Fudolf" rather than Rudolph as listed in the judgment in this case, the documents all contain the same first and last names.

20

motion to revoke Rodriguez's community supervision, and the motion mentions that Rodriguez was convicted of the offense of theft, lists the date that he was convicted under the 1994 judgment, and states the punishment that Rodriguez was initially assessed. The fourth document is the capias issued as part of the revocation proceedings, and the capias specified that Rodriguez had been convicted of the felony offense of theft with two or more previous convictions for theft. The final document submitted by the State is the judgment revoking Rodriguez's community supervision for the 1994 offense, and the judgment specifies that Rodriguez was convicted of a third-degree felony for theft, lists the dates for the 1994 offense and for the 1994 judgment placing Rodriguez on community supervision, sets out Rodriguez's initially assessed punishment under the 1994 judgment as well as the punishment imposed following revocation, and includes Rodriguez's thumb print. During the punishment hearing, the State called Officer Ronnie Womack to the stand to discuss the documents listed above as well as others. In his testimony, Officer Womack testified that he has received specialized training regarding fingerprint analysis, that he obtained Rodriguez's fingerprints prior to testifying, that he compared Rodriguez's fingerprints with those fingerprints taken for the 1994 offense, and that Rodriguez's fingerprints matched the ones present in the documents pertaining to the 1994 offense.

On appeal in this case, Rodriguez argues that although the 1994 conviction stated that the offense was a third-degree felony, the offense was classified by statute as a state-jail felony at the time that the offense was alleged to have occurred. In light of the alleged disparity between the offense level listed in the judgment and the offense level described by the relevant statutory provision of the Penal Code, Rodriguez contends that the 1994 conviction was for a state-jail

21

felony, not a third-degree felony, that "the State relied on an illegal sentence and void judgment for enhancement purposes in this case," and that this Court should reverse his punishment and remand for a new sentencing hearing.[6] *See* Tex. Penal Code § 12.42 (specifying that requirements for enhancing punishment for felony offenses due to prior felony convictions are not satisfied by proof of prior convictions for state-jail felonies).

By presenting this issue on appeal, Rodriguez is, in essence, collaterally attacking his prior conviction serving as an enhancement allegation. At first blush, it would seem that the type of claim that Rodriguez is pursuing should be pursued through an application for writ of habeas corpus. *See Ex parte Pue*, 552 S.W.3d 226, 228 (Tex. Crim. App. 2018) (noting that "[a] claim that a sentence is illegal because it exceeds the statutory maximum is cognizable in a writ of habeas corpus and may be raised at any time"); *Ex parte Rich*, 194 S.W.3d 508, 510, 511 (Tex. Crim. App. 2006) (observing that applicant may "raise a claim of illegal sentence based on an improper enhancement for the first time on a writ of habeas corpus"); *see also Ex parte Millard*, 587 S.W.2d 703,

---

[6] In its reply brief, the State argues that Rodriguez failed to preserve his third issue for appellate purposes by failing to object to the use of the enhancement at trial in this case. *See Johnson v. State*, No. 13-15-00420-CR, 2016 WL 3911231, at *1-2 (Tex. App.—Corpus Christi July 14, 2016, pet. ref'd) (mem. op., not designated for publication) (determining that defendant failed to preserve complaint that State was using prior "misdemeanor conviction as both a predicate offense and as an enhancement allegation"); *Sparks v. State*, 809 S.W.2d 773, 774 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (noting that collateral attack on prior conviction was possible but explaining that "the burden of proof was on the party attacking the conviction to show its invalidity in the record and preserve the error for appeal"). However, governing case law by the court of criminal appeals demonstrates that the type of claim asserted by Rodriguez does not need to be presented to a trial court in order to be considered on appeal. *See Mizell v. State*, 119 S.W.3d 804, 806 n.6 (Tex. Crim. App. 2003) (noting that "[u]nlike most trial errors which are forfeited if not timely asserted, a party is not required to make a contemporaneous objection to the imposition of an illegal sentence"); *see also Ex parte Rich*, 194 S.W.3d 508, 510 (Tex. Crim. App. 2006) (providing that "a defect that renders a sentence void may be raised at any time").

705 (Tex. Crim. App. 1979) (stating that "[i]t is established however, that a collateral attack may be brought against enhancement of punishment that is based on a void prior conviction").

However, the court of criminal appeals has previously explained that an enhancement allegation may be collaterally attacked in a non-habeas context under certain circumstances. Specifically, the court has explained that "[a] prior conviction that was alleged for enhancement may be collaterally attacked if it is void . . . or if it is tainted by a constitutional defect . . . . Other, lesser infirmities in a prior conviction may not be raised by a collateral attack." *Galloway v. State*, 578 S.W.2d 142, 143 (Tex. Crim. App. 1979) (internal footnotes omitted); *see also Deen v. State*, 509 S.W.3d 345, 349-51 (Tex. Crim. App. 2017) (addressing in direct appeal issue of whether enhancement allegation was void); *Rhodes v. State*, 240 S.W.3d 882, 887 (Tex. Crim. App. 2007) (noting that defendant may challenge "enhancement allegation . . . if the prior judgment is void").

Further, the court of criminal appeals has explained that "a sentence is void when the punishment is unauthorized." *Ex parte Seidel*, 39 S.W.3d 221, 225 n.4 (Tex. Crim. App. 2001). When expounding upon this area of law, the court also stated that although "[a] punishment exceeding the statutory maximum is not outside the jurisdictional parameters of a trial court," that type of "punishment renders the judgment void because it is illegal, *i.e., unauthorized by law*." *Id.* Additionally, the court reasoned that if a judgment is void, "it may be attacked either by direct appeal or collateral attack." *Id.* at 225; *see also Mizell v. State*, 119 S.W.3d 804, 805, 806 (Tex. Crim. App. 2003) (concerning whether State could challenge defendant's sentence as illegal and providing that "[a] sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal"; that "any court—trial or appellate—may notice, on its own, an illegal sentence

23

and rectify that error"; "that "[a] trial or appellate court which otherwise has jurisdiction over a criminal conviction may always notice and correct an illegal sentence"; and that "[t]here has never been anything in Texas law that prevented *any* court with jurisdiction over a criminal case from noticing and correcting an illegal sentence"); *Ex parte Seidel*, 39 S.W.3d at 225 (stating that "[a] void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment" (quoting *Ex parte Spaulding*, 687 S.W.2d 741, 745 (Tex. Crim. App. 1985) (Teague, J., concurring))).

Consistent with these directives, several appellate cases have reasoned that an enhancement allegation used to elevate the punishment level during a trial for a criminal offense may be attacked on appeal if the prior conviction serving as the enhancement is void. *See, e.g.*, *Sumpter v. State*, No. 14-95-00942-CR, 1996 WL 198252, at *1-2 (Tex. App.—Houston [14th Dist.] Apr. 25, 1996, no pet.) (not designated for publication) (quoting language from court of criminal appeals regarding when enhancement allegation may be collaterally attacked but concluding that alleged error identified by appellant was clerical error and did not render void prior conviction serving as enhancement allegation); *Houston v. State*, 916 S.W.2d 705, 707-08 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (setting out circumstances in which enhancement allegations may be collaterally attacked but overruling appellant's arguments).[7]

---

[7] In another appellate decision, a defendant sought to challenge the use of a prior conviction for enhancement purposes because that prior conviction incorrectly stated that it was for a third-degree felony rather than a state-jail felony as provided by statute, but the appellate court determined that "the prior judgment is not subject to collateral attack on this basis" because the alleged error "could have been remedied by entry of a corrected judgment or reformation on appeal." *See Thurman v. State*, No. 14-02-00319-CR, 2003 WL 548579, at *2 (Tex. App.—Houston [14th Dist.] Feb. 27, 2003, pet. ref'd) (mem. op., not designated for publication). However, unlike the present case, nothing in the *Thurman* opinion indicates that the punishment that the defendant received for the prior conviction exceeded the permissible punishment range for state-jail felonies.

As discussed above, Rodriguez contends that the 1994 conviction for theft could not be used to enhance his punishment in this case because that prior conviction is a void judgment, and during the punishment hearing, the State presented several documents pertaining to the 1994 offense specifying that Rodriguez committed theft of property in 1994, that the stolen property had a value of less than $1,500, that Rodriguez had previously been convicted of two misdemeanor theft offenses and of the felony offense of forgery, that the 1994 offense was a third-degree felony, and that Rodriguez was initially sentenced to ten years' imprisonment before he was placed on community supervision. In addition, Officer Womack testified that the fingerprints obtained from Rodriguez in the current case matched those collected for the 1994 offense.

Although the provision of the Penal Code in effect prior to the date of the alleged 1994 theft offense elevated theft offenses to third-degree felonies if the defendant had previously been convicted twice of theft, *see* Act of May 10, 1993, 73d Leg., R.S., ch. 203, § 4, sec. 31.03, 1993 Tex. Gen. Laws 390, 391 (providing that theft is third-degree felony if "the value of the property is less than $750 and the defendant has previously been convicted two or more times of any grade of theft") (amended 1993 to 2017) (current version at Tex. Penal Code § 31.03), the version of the statute in effect when Rodriguez allegedly committed the 1994 offense stated that theft was a *state-jail felony* if "the value of the property is less than $1,500 and the defendant has previously been convicted two or more times of any grade of theft," *see* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, sec. 31.03(e)(4), 1993 Tex. Gen. Laws 3586, 3637-38 (amended 1995 to 2017) (current version at Tex. Penal Code § 31.03). Accordingly, the record before this Court indicates that Rodriguez's 1994 theft conviction should have been for a state-jail felony, not a third-degree felony.

As discussed above, a challenge to an enhancement allegation in the procedural posture presented here can be sustained if the prior conviction is void, and a prior conviction is void if the punishment assessed was not authorized by law. The documents pertaining to the 1994 conviction that were presented by the State specified that Rodriguez was sentenced to ten years' imprisonment, which is consistent with the permissible punishment range for a third-degree felony but not for a state-jail felony. *Compare* Tex. Penal Code § 12.34 (providing that punishment range for third-degree felony is between two and ten years' imprisonment), *with id.* § 12.35 (stating that punishment range for state-jail felony is between 180 days and two years' confinement). Moreover, although the indictment for the 1994 offense contained an enhancement paragraph alleging that Rodriguez had previously been convicted of the felony offense of forgery and although the provisions of the Penal Code in effect at the time of the 1994 conviction did enhance the punishment range for certain state-jail felonies if a defendant had been previously convicted of a single felony offense, the governing provisions of the Penal Code did not authorize the punishment range for the state-jail felony of theft to be enhanced by a single prior felony conviction.[8] *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, secs. 12.35, .42, 1993 Tex. Gen. Laws 3586, 3603-04 (elevating punishment range for state-jail felonies to that of second-degree felonies if state-jail felony involved use of deadly weapon and if defendant had been previously convicted of felony offense or if defendant had previously been convicted of one of certain types of felonies listed in

---

[8] We note that the judgment of conviction for the 1994 offense stated that it appeared "from the proof and the findings of the Court that" Rodriguez had "not before been convicted of a felony in this State or another state." However, as set out above, the indictment for that offense contained an enhancement allegation regarding a prior felony conviction from 1990 for forgery, and Rodriguez pleaded guilty to the charges listed in the indictment.

26

statute and committed another felony offense) (amended 1995 to 2015) (current version at Tex. Penal Code §§ 12.35, .42, .425).[9]

Given the testimony linking Rodriguez to the 1994 offense as well as the numerous documents submitted in this case demonstrating that the offense level for the 1994 theft was improperly characterized as a third-degree felony, that the punishment imposed for the 1994 offense exceeded the punishment authorized by the statutes in effect at the time that the 1994 offense allegedly occurred, and that the statutes in effect at that time did not permit the punishment range for the 1994 theft to be enhanced, we must conclude that the sentence was not authorized and that the 1994 conviction is void. Accordingly, we must also conclude based on the record before this Court in this case that the 1994 offense should not have been used as a felony-enhancement allegation in the underlying trial in this case.

With the preceding in mind, the State still asserts that Rodriguez may not challenge the propriety of the enhancement allegation. In particular, the State acknowledges that the statute that went into effect shortly before the prior theft allegedly occurred changed the offense level for theft with two prior theft convictions from a third-degree felony to a state-jail felony, but the State notes that the bill enacting the change stated that the changes applied "only to an offense committed

---

[9] Similarly, the current version of the Penal Code provision, in general, does not authorize the punishment range for a state-jail-felony conviction for theft to be elevated by a single prior felony conviction. *See* Tex. Penal Code § 12.425 (enhancing punishment range for state-jail felony if "the defendant has previously been convicted of two state jail felonies" or if "the defendant has previously been finally convicted of two felonies other than a state jail felony" and also enhancing punishment range for state-jail felony if "the defendant has previously been finally convicted of a felony other than a state jail felony" and if state-jail felony involved use of deadly weapon or if defendant was also previously convicted of specific types of felonies enumerated in statute).

27

on or after the effective date of this article" and that "an offense is committed before the effective date of this article if any element of the offense occurs before the effective date." *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.18, 1993 Tex. Gen. Laws 3586, 3705. In light of this language and in light of the case law explaining that "[t]he 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitations period," *see Hendrix v. State*, 150 S.W.3d 839, 853 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd), the State argues that Rodriguez "could have been convicted for [a] theft" occurring at any time within the five years leading up to the date alleged in the indictment, *see* Tex. Code Crim. Proc. art. 12.01(4)(A) (setting out statute of limitations for theft). Further, the State observes that most of that five-year period occurred prior to the change in the law making theft a state-jail felony rather than a third-degree felony.

Building on these arguments and observations, the State also asserts that in cases in which an offense is alleged to have occurred "on or about" a certain date, courts have applied "the presumption of regularity to uphold convictions which might have been incorrect if the offense occurred on the *actual date* which the offense was alleged to have occurred." *See Scates v. State*, 274 S.W.2d 833, 833-34 (Tex. Crim. App. 1955) (addressing issue of whether punishment was incorrectly assessed under prior version of statute that had been amended for offense that was alleged to have occurred "on or about" certain date and concluding that in absence of any contradictory information in record, there is presumption "that the conviction was regular and that the offense charged was found to have been committed within the time prescribed by law authorizing the penalty assessed"); *see also Breeding v. State*, 274 S.W.2d 704, 704 (Tex. Crim. App. 1955) (explaining that

28

"[t]he presumption prevails that the offense was committed at a time when the punishment assessed was applicable").

For all of these reasons, the State contends that this Court should presume that "the evidence was sufficient to support [Rodriguez]'s 1994 judgment of conviction for a third-degree felony" because that offense occurred prior to the effective date of the statute changing the offense level for theft from a third-degree felony to a state-jail felony.

Although the State points to various types of presumptions that could apply when the record provides no information contradicting those presumptions, that is not the case here. Although the indictment alleged that Rodriguez committed the 1994 theft "on or about" September 27, 1994, and although the judgment for the 1994 offense stated that Rodriguez pleaded guilty to the offense "contained in the indictment," the judgment also expressly stated that the trial court "considered the pleadings and evidence offered" and concluded that Rodriguez committed the theft "on September 27, 1994." Similarly, the judgment revoking Rodriguez's community supervision for the 1994 offense listed the offense date as being September 27, 1994. In light of the language of the judgment as well as all of the other documents admitted into evidence pertaining to the 1994 offense, we must conclude that any presumption that the offense occurred before the effective date of the statutory amendment has been rebutted.

In another set of arguments contending that the enhancement may not be challenged in this appeal, the State asserts that a defendant may be estopped from asserting that a conviction is void. As support for this argument, the State refers to *Deen v. State*, 509 S.W.3d 345 (Tex. Crim. App. 2017). In *Deen*, the defendant was convicted of robbery and was subject to a minimum five-

29

year sentence, but the trial court imposed a punishment of four years' imprisonment instead. *Id.* at 347. Following his release from prison for that offense, the defendant was charged with possessing a controlled substance. *Id.* During the trial for the possession charge, the State asserted that the defendant's punishment level should be enhanced due to the prior robbery conviction, and the trial court found the enhancement to be true and sentenced the defendant accordingly. *Id.* On appeal, the defendant "contended that because his aggravated robbery sentence was shorter than the statutory minimum, the judgment imposing it was void, and his prior conviction was therefore unavailable to enhance his sentence in this case." *Id.* The court of criminal appeals determined that because the defendant "accepted the benefit of his illegally lenient sentence, . . . he is therefore estopped by the prior judgment from collaterally attacking the validity of the conviction it imposed." *Id.* at 348.

With this case in mind, the State contends that Rodriguez obtained a benefit from being convicted of a higher-level offense and, therefore, should not be able to challenge the enhancement. Specifically, the State argues that at the time of the 1994 conviction, individuals who were convicted of state-jail felonies were not statutorily entitled to "parole or good-conduct time," *see Rogers v. State*, 432 S.W.3d 916, 917 n.1 (Tex. App.—Texarkana 2014, no pet.) (setting out historical and statutory reasons why individuals convicted of state-jail felonies were not "entitled to parole or good-conduct credit"), asserts that individuals convicted of state-jail felonies were not eligible for community supervision "in some circumstances," and urges that an individual may have preferred "to plead [guilty] to a third-degree felony offense with an equal—or even with a significantly longer—sentence, on the condition" that he be placed on community supervision or in an effort to make "parole . . . more likely." Accordingly, the State insists that because Rodriguez

30

accepted the benefit of being placed on community supervision for the theft offense and received the potential benefit "for good conduct time and parole eligibility," Rodriguez is barred from attacking the theft conviction.[10]

As an initial matter, we note that the circumstances present in *Deen* differ significantly from those here. In *Deen*, the offense level for the enhancement allegation was correct, but the defendant received the benefit of a punishment that was less than the required minimum. For that reason, the defendant in *Deen* received an actual benefit resulting in the imposition of a lesser sentence. In contrast, the offense level for the theft enhancement in this case was incorrectly determined to be a third-degree felony rather than a state-jail felony as specified by the governing statute, and Rodriguez was assessed a punishment that exceeded the maximum amount authorized for state-jail felonies.

---

[10] The State also contends that Rodriguez is barred by "the doctrine of laches" from collaterally attacking the 1994 conviction. However, neither of the cases relied on by Rodriguez involved a situation in which a defendant was challenging as void an enhancement allegation that was used to increase the defendant's punishment. *See Ex parte Smith*, 444 S.W.3d 661, 663-64, 668 (Tex. Crim. App. 2014) (concerning habeas application filed ten years after defendant was convicted in which applicant argued that he was "denied his rights to appeal and effective assistance of appellate counsel" and reasoning that "[t]here must come a time when a criminal conviction is final, when the deterrent effects of certainty and immediacy of punishment outweigh an inmate's right to endlessly litigate an appeal of his conviction" (quoting *In re Steptoe*, 132 S.W.3d 434, 438 (Tex. Crim. App. 2004) (Cochran, J., dissenting))); *Ex parte Perez*, 398 S.W.3d 206, 208, 211 (Tex. Crim. App. 2013) (addressing habeas complaints regarding nearly twenty-year-old conviction that asserted that applicant missed deadline for filing petition for review because his counsel did not timely provide notice that intermediate court had affirmed his conviction and noting that "equity aids the vigilant and not those who slumber on their rights" (quoting *Ex parte Carrio*, 992 S.W.2d 486, 487 n.2 (Tex. Crim. App. 1999), *overruled in part by Ex parte Perez*, 398 S.W.3d 206, 213 (Tex. Crim. App.2013))). Moreover, a determination that Rodriguez's claim is barred would be inconsistent with the directives from the court of criminal appeals instructing that a claim that a punishment exceeded the authorized range of punishment and is, therefore, illegal may be raised at any time. *See Ex parte Pue*, 552 S.W.3d 226, 228 (Tex. Crim. App. 2018).

Additionally, although the State contends that there are circumstances in which a defendant convicted of a state-jail felony may not be placed on community supervision, we have found no statutory basis that would have prohibited the trial court from placing Rodriguez on community supervision if he had pleaded guilty to a state-jail-felony charge for theft rather than a third-degree-felony charge. *See* Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, art. 42.12, 1965 Tex. Gen. Laws 317, 489-99 (amended 1967 to 2015) (setting out circumstances in which individuals may be placed on community supervision and specifying in amendments that individuals convicted of state-jail felonies may be placed on community supervision), *repealed by* Act of May 26, 2015, 84th Leg., R.S., ch. 770, § 3.01, 2015 Tex. Gen. Laws 2321, 2395.

Moreover, although the State theorizes that an individual could obtain a benefit from being sentenced under a more serious offense level than statutorily authorized by potentially being awarded with good-behavior credit and parole eligibility, it is not entirely clear that this type of potential benefit purportedly obtained by agreeing to be subject to a significantly higher punishment range can serve as a basis for estopping someone from challenging the legality of a prior sentence under the circumstances present here. *See Deen*, 509 S.W.3d at 350 (explaining that "[t]he benefit here was Appellant's release from prison approximately nine months earlier than the Penal Code would have otherwise permitted"). Furthermore, we note that there is no indication that Rodriguez actually received any of these potential benefits. On the contrary, the record before this Court indicates that Rodriguez was originally placed on community supervision for ten years for the theft offense, that the community supervision was revoked almost two years later, and that Rodriguez was sentenced to two years' imprisonment following the revocation. *See* Tex. Penal Code § 12.35

(stating that maximum punishment for state-jail felony is two years). In light of the preceding, we do not believe that Rodriguez received any benefit that would estop him from challenging the theft enhancement on grounds that the prior conviction was void.

For all the reasons previously given, we must conclude that the punishment assessed in the 1994 theft conviction was not authorized by law and that, therefore, the conviction was void. Because the 1994 conviction was used to enhance Rodriguez's punishment in this case for both offenses, we sustain Rodriguez's third issue on appeal and remand the case for a new punishment hearing. *See Ex parte Rich*, 194 S.W.3d at 514 (providing that if "an appellate court finds error at the punishment stage of the trial, the case may be remanded to the trial court for the proper assessment of punishment").

## CONCLUSION

Having overruled Rodriguez's first two issues on appeal but having sustained his final issue on appeal, we reverse the district court's judgments of conviction and remand for a new punishment hearing consistent with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Bourland, and Toth

Reversed and Remanded on Motion for Rehearing

Filed: December 7, 2018

Do Not Publish

33